Marc S. Dreier (MD-9713)
Joel A. Chernov (JC-8789)
Regina M. Alter (RA-7014)
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100



*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

U.V.A VADUZ AND KLAUS BOHRER,                    :     07 CV 11497  (TPG)

                               Plaintiffs,     :

                                           :     **AMENDED COMPLAINT**

                  -against-     :

THE REPUBLIC OF ARGENTINA,                         :

                               Defendant.     :

                                         :

------------------------------------------------------------------ x

       Plaintiffs, by their attorneys, Dreier LLP, for their Complaint allege as follows:

**The Parties**

       1.     Plaintiff U.V.A. Vaduz ("Vaduz") is a corporation organized under the laws of Liechtenstein. Vaduz acquired a certain bond, ISIN No. US040114BE93, issued by defendant The Republic of Argentina (the "Republic") pursuant to a Fiscal Agency Agreement, dated as of October 19, 1994 (the "1994 Fiscal Agency Agreement"), in the principal amount of $1,000,000. A copy of the 1994 Fiscal Agency Agreement is annexed hereto as Exhibit A.

       2.     In addition, Vaduz also acquired a certain bond, ISIN No. US040114AH34, issued by the Republic pursuant to a Fiscal Agency Agreement, dated as of December 10, 1993 (the "1993 Fiscal Agency Agreement"), in the principal amount of

$4,500,000.  A copy of the 1993 Fiscal Agency Agreement and Exhibit 1 thereto are annexed hereto as Exhibits B and C, respectively.

3.    Plaintiff Klaus Bohrer is a citizen of Germany.  Mr. Bohrer acquired a certain bond, ISIN No. US040114GA27, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $2,000,000.

4.    Defendant the Republic is a foreign state as defined in 28 U.S.C. § 1603(a).

### Jurisdiction

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1330.

6.    Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

### COUNT ONE

7.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 and 3-6 as if set forth here at length.

8.    As set forth above, plaintiffs Vaduz and Mr. Bohrer acquired certain bonds issued by the Republic to the 1994 Fiscal Agency Agreement (the "1994 Bonds") and continue to own those bonds.

9.    Pursuant to Section 22 of the 1994 Fiscal Agency Agreement, the Republic (i) appointed Banco de la Nacion Argentina as its agent for service of process, (ii) agreed to submit to the jurisdiction of this Court, and (iii) agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

10.    Pursuant to Section 12 of the 1994 Fiscal Agency Agreement, the following, *inter alia*, are defined as "Events of Default:"

(a)    Non-Payment: the Republic fails to pay any principal of
any of the Securities of such Series when due and payable
or fails to pay any interest on any of the Securities of such
Series when due and payable and such failure continues for
a period of 30 days; or

(d)    Moratorium: a moratorium on the payment of principal of,
or interest on, the Public External Indebtedness of the
Republic shall be declared by the Republic.

11.    Paragraph 12 of the 1994 Fiscal Agency Agreement further provides that
following either of the foregoing Events of Default, a note holder, *i.e.*, plaintiffs Vaduz and Mr.
Bohrer, may give the Republic written notice and declare "the principal amount of such
Securities by it to be due and payable immediately," together with all accrued interest.

12.    In or about December 2001, the Republic declared a moratorium on the
payment of principal and interest with respect to all of its foreign debt, including all payments
due under the 1994 Bonds.

13.    By reason of the foregoing, there has been an Event of Default on the
1994 Bonds, and the Republic is in breach of its obligations under the 1994 Fiscal Agency
Agreement.

14.    In accordance with paragraph 12 of the 1994 Fiscal Agency Agreement,
by letters dated December 20, 2007, plaintiffs Vaduz and Mr. Bohrer provided the Republic with
written notice that they were declaring the principal and interest on the 1994 Bonds to be due and
payable immediately.

15.    Notwithstanding, since December 2001, the Republic has failed to make
any payment of principal or interest to plaintiffs Vaduz and Mr. Bohrer.

16.    By reason of the foregoing, the Republic has breached its contractual obligations to plaintiffs Vaduz and Mr. Bohrer and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT TWO

17.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 2 and 4-6 as if set forth here at length.

18.    As set forth above, plaintiff Vaduz acquired certain bonds issued by the Republic pursuant to the 1993 Fiscal Agency Agreement (the "1993 Bonds") and continues to own those bonds.

19.    Pursuant to Section 20 of the 1993 Fiscal Agency Agreement, the Republic: (i) appointed Banco de la Nacion Argentina as its agent for service of process, (ii) agreed to submit to the jurisdiction of this Court, and (iii) agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

20.    Pursuant to the "Form of the Global Bond", which is annexed as Exhibit 1 to the 1993 Fiscal Agency Agreement (the "1993 Bond Form"), the following, *inter alia*, are defined as "Events of default":

> (a)    the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or

> (d)    a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

1993 Bond Form at pp. 7-8.

21.    The 1993 Bond Form further provides that following either of the foregoing Events of Default, a note holder, *i.e.*, plaintiff Vaduz, may give the Republic written

notice and declare "the principal amount of the Bonds to be due and payable immediately", together with all accrued interest. *See* 1993 Bond Form at p. 8.

22.    In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the 1993 Bonds.

23.    In accordance with the first paragraph contained on page 8 of the 1993 Bond Form, by letter dated December 20, 2007, plaintiff Vaduz, provided the Republic with written notice that it was declaring the principal and interest on the 1993 Bonds to be due and payable immediately.

24.    Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest to plaintiff Vaduz.

25.    By reason of the foregoing, there has been an Event of Default on the 1993 Bonds, and the Republic is in breach of its obligations to plaintiff Vaduz and is liable for damages in an amount to be determined at trial, plus interest.

WHEREFORE, plaintiffs demand judgment as follows:

i.    On Count One, awarding plaintiffs Vaduz and Mr. Bohrer damages against the Republic in an amount to be determined at trial, plus interest;

ii.    On Count Two, awarding plaintiff Vaduz damages against the Republic in an amount to be determined at trial, plus interest;

iii.    Awarding plaintiffs their costs, prejudgment interest, attorneys' fees and such other and additional relief as the Court deems just and proper.

Dated: New York, New York
        July 24, 2008

DREIER LLP

By: _____
    Marc S. Dreier (MD-9713)
    Joel A. Chernov (JC-8789)
    Regina M. Alter (RA-7014)

499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Plaintiffs*

Marc S. Dreier (MD-9713)
Joel A. Chernov (JC-8789)
Regina M. Alter (RA-7014)
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

U.V.A. VADUZ, et al.,                                            :

                                    Plaintiffs,                  :        07 CV 11497 (TPG)

                                                                 :
                  -against-                                      :        **AFFIDAVIT**
                                                                 :        **OF SERVICE**
THE REPUBLIC OF ARGENTINA,                                       :

                                    Defendant.                   :
------------------------------------------------------------------- x

STATE OF NEW YORK          )
                           ):ss:
COUNTY OF NEW YORK         )

                  ERIC PULSIPHER, being duly sworn, deposes and says:

          I am over eighteen years of age, not a party to this lawsuit and reside in New
York, New York. On August 8, 2008, I caused to be served by hand delivery true copies of the
foregoing *Amended Complaint* with annexed exhibits on:

                  Carmine D. Boccuzzi, Esq.
                  Cleary Gottlieb Steen & Hamilton
                  cboccuzzi@cgsh.com
                  and/or maofiling@cgsh.com
                  *Attorneys for Defendants*

                                                                 Eric Pulsipher

Sworn to before me this
8th day of August, 2008

Notary Public

FABIOLA OROPEZA
Notary Public, State of New York
No. 01OR6082407
Qualified in New York County
Commission Expires October 28, 2010

{00378660.DOC;}

Exhibit 1
[Form of Global Bond]

Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) (the "Depository") to the Republic (as defined below) or its agent for registration of transfer, exchange or payment, and any certificate issued in the name of Cede & Co. or such other name as requested by an authorized representative of the Depository and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein.

Unless and until this certificate is exchanged in whole for Bonds in definitive registered form, this certificate may not be transferred except as a whole by the Depository to a nominee thereof or by a nominee thereof to the Depository or by the Depository or any such nominee to a successor of the Depository or a nominee of such successor.

REGISTERED
NO.

CUSIP: 040 114 AH3
ISIN:  US 040 114 AH34

THE REPUBLIC OF ARGENTINA
U.S.$1,250,000,000
8 3/8% BONDS DUE DECEMBER 20, 2003

The Republic of Argentina (the "Republic"), for value received, hereby promises to pay to Cede & Co., or its registered assigns, the principal sum of U.S.$_____ on December 20, 2003 (the "Maturity Date"), together with such further sums, if any, as may be payable by way of Additional Amounts (as defined herein), upon presentation and surrender of this Bond and to pay interest thereon at the rate of 8 3/8% per annum from December 20, 1993 together with Additional Amounts, if any, until the principal hereof is paid, in two equal semi-annual installments in arrears on the 20th day of June and the 20th day of December in each year (each such date an "Interest Payment Date") commencing on June 20th, 1994, and on the Maturity Date.

This is a Registered Global Bond representing U.S.$_____ aggregate principal amount of a duly authorized issue of debt securities of the Republic designated as its 8 3/8% Bonds due December 20, 2003 (the

"Bonds"), initially limited in aggregate principal amount to U.S.$1,250,000,000.  This Registered Global Bond is issued under and subject to a Fiscal Agency Agreement dated as of December 10, 1993 (the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (the "Fiscal Agent", which term includes any successor fiscal agent) to which Fiscal Agency Agreement reference is hereby made for a statement of the respective rights, duties and immunities of the Republic, the Fiscal Agent and holders of the Bonds and the terms upon which the Bonds are, and are to be, authenticated and delivered.  Further references herein to principal or interest shall be deemed to also refer to any Additional Amounts which may be payable hereunder.

This Registered Global Bond shall for all purposes be governed by, and construed in accordance with, the laws of the State of New York, except with respect to authorization and execution by the Republic.

Interest on this Registered Global Bond will accrue from the most recent Interest Payment Date to which interest has been paid, or, if no interest has been paid or duly provided for, from December 20, 1993, until the principal hereof has been paid or duly made available for payment.  Any overdue principal or interest on the Bonds shall bear interest at the rate of 8 3/8% per annum (before as well as after judgment) until paid, or if earlier, when the full amount of the moneys payable has been received by the Fiscal Agent and notice to that effect has been given in accordance with the provisions set forth herein.  The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will be paid to the person in whose name this Registered Global Bond (or one or more predecessor Registered Global Bonds) is registered at the close of business on June 5 or December 5 (whether or not a Business Day, as defined below), as the case may be, next preceding such Interest Payment Date (each such day a "Regular Record Date").  Any such interest not so punctually paid or duly provided for will be paid to the person in whose name this Registered Global Bond (or one or more predecessor Registered Global Bonds) is registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Fiscal Agent, notice whereof shall be given to the registered holder hereof not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner. Interest payments on this Registered Global Bond will include interest accrued to but excluding the Interest Payment Dates or the Maturity Date, as the case may be. Interest will be calculated on the basis of a 360-day year consisting of twelve 30-day months.

2

In the event that the Maturity Date or any Interest Payment Date with respect to this Registered Global Bond shall be a day that is not a Business Day, the registered holder hereof shall not be entitled to payment until the next following Business Day. For purposes hereof, "Business Day" shall mean a day on which banking institutions in The City of New York and at the applicable place of payment are not authorized or obligated by law or executive order to close. No further interest shall be paid in respect of the delay in such payment.

Payment of the principal of and interest on this Registered Global Bond will be made by wire transfer in immediately available funds to a bank account in The City of New York designated by the holder of this Registered Global Bond. If Bonds in definitive registered form are issued in exchange for this Registered Global Bond, payment of the principal of such Bonds will be made upon presentation and surrender of such Bonds at the office of the Fiscal Agent maintained for that purpose in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to the Fiscal Agency Agreement. Payment of interest due prior to or on the Maturity Date will be made by forwarding by post or otherwise delivering a check, to the registered addresses of registered holders of Bonds, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Bonds. Payment of the principal of and interest on the Bonds will be made in such coin or currency of the United States of America, as at the time of payment, is legal tender for payment of public and private debts.

This Registered Global Bond is not subject to any sinking fund, is not redeemable at the option of the Republic and is not repayable at the option of the holder prior to maturity.

All payments in respect of principal of and interest on this Registered Global Bond will be made free and clear of, and without withholding or deduction for, or on account of, any taxes, duties, assessments or governmental charges (together, "Taxes") of whatsoever nature imposed, levied, collected, withheld or assessed by or within the Republic of Argentina or any authority thereof or therein having power to tax, unless such withholding or deduction is required by law. In such event, the Republic will pay to the registered holder of this Registered Global Bond such additional amounts (the "Additional Amounts") as will result in receipt by the holders of Bonds of the amounts which would have been received by them had no such withholding or deduction been required, except that no such

3

Additional Amounts shall be payable with respect to any Bond:

(a)   to a holder (or a third party on behalf of a holder) where such holder is liable for such Taxes in respect of such Bond by reason of such holder having some connection with the Republic of Argentina, other than the mere holding or ownership of such Bond or the receipt of the relevant payment in respect thereof; or

(b)   if the Bond is surrendered more than 30 days after the Relevant Date and such surrender is required for payment except to the extent that the holder thereof would have been entitled to such Additional Amounts for presenting the same for payment on the last day of such period of 30 days.  For this purpose, the "Relevant Date" in relation to any Bond means whichever is the later of:

(i)   the date on which the payment in respect of such Bond becomes due and payable; or

(ii)   if the full amount of the moneys payable on such date in respect of such Bond has not been received by the Fiscal Agent on or prior to such date, the date on which notice is duly given to the holders of Bonds that such moneys have been so received and are available for payment.

So long as any Bond remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

So long as any Bond remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist, or permit Banco Central de la República Argentina ("Banco Central") to create or permit to subsist, any lien, pledge, mortgage, security interest, indenture, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Bonds either (i) are secured equally and rateably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66-2/3% of the registered holders of the Bonds then outstanding.

Notwithstanding the foregoing, the Republic may permit to subsist:

(i)  any Lien upon property to secure Public External Indebtedness of the Republic or Banco Central incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii)  any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic or Banco Central and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii)  any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized bonds issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

(iv)  any Lien in existence on the date of the Fiscal Agency Agreement;

(v)  any Lien securing Public External Indebtedness of the Republic or Banco Central issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public External Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)  any Lien on any of the Par and Discount Bonds; and

(vii)   any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this section:

"External Indebtedness" means obligations (other than the Bonds) for borrowed money or evidence by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic or Banco Central, any External Indebtedness of, or guaranteed by, the Republic or Banco Central, as the case may be, which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, bonds, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93; (ii) any indebtedness issued

in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to in (1) above.

If any of the following events ("Events of Default") occurs and is continuing:

(a)   the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or

(b)   the Republic does not perform or comply with any one or more of its other obligations in the Bonds or in the Fiscal Agency Agreement, which default is incapable of remedy or is not remedied within 90 days after written notice of such default shall have been given to the Republic by the Fiscal Agent or the registered holders of at least 25% in aggregate principal amount of the Bonds; or

(c)   any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of any Public External Indebtedness of the Republic or Banco Central yhaving an aggregate principal amount of U.S.$30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, any such Public External Indebtedness having an aggregate principal amount of U.S.$30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d)   a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic; or

7

(e)   the validity of the Bonds shall be contested by the Republic;

then the holders of not less than 25% in aggregate principal amount of the Bonds, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Bonds to be due and payable immediately and in the case of (a) and (d) above, each holder of Bonds may by such notice in writing declare the principal amounty of Bonds held by it to be due and payable immediately, and upon any such declaration such principal amount shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Bonds shall have been cured; provided that if, at any time after the principal of the Bonds shall have been declared due and payable, and before any sale of property under any judgment or decree for the payment of monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Bonds which shall have become due otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each Bond at the rate of interest set forth in the title of this Bond, to the date of such payment or deposit) and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisors, and any and all defaults under the Bonds, other than the non-payment of principal on the Bonds which shall have become due solely by declaration, shall have been remedied, then, and in every such case, the holders of 75% in aggregate principal amount of the Bonds then outstanding, after a meeting of Bondholders held in accordance with the procedures described herein and in the Fiscal Agency Agreement, by written notice to the Republic at the specified office of the Fiscal Agent, may on behalf of the holders of all of the Bonds waive all defaults and rescind and annul such declaration and its consequences; but no such waiver or recission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

The Fiscal Agent has been appointed registrar for the Bonds, and the Fiscal Agent will maintain at its office in the Borough of Manhattan, The City of New York a register for the registration and registration of transfers and exchanges of Bonds.  Subject to the limitations, terms and conditions set forth herein and in the Fiscal Agency Agreement, this Registered Global Bond may be transferred at the aforesaid office of the Fiscal Agent by surrendering

8

this Registered Global Bond for cancellation, and thereupon the Fiscal Agent shall issue and register in the name of the transferee, in exchange herefor, a new Registered Global Bond or Bonds having identical terms and provisions and having a like aggregate principal amount in authorized denominations.   Upon the occurrence of certain events specified in Section 6 of the Fiscal Agency Agreement, this Registered Global Bond is exchangeable at said office of the Fiscal Agent for Bonds in definitive registered form without coupons in authorized denominations of U.S.$1,000 and integral multiples thereof in an equal aggregate principal amount and having identical terms and provisions as this Registered Global Bond.   On or after such exchange, the Fiscal Agent shall make all payments to be made in respect of such Bonds in definitive registered form to the registered holders thereof regardless of whether such exchange occurred after the record date for such payment. All Registered Global Bonds surrendered for transfer shall be accompanied by a written instrument of transfer in form satisfactory to the Fiscal Agent and executed by the registered holder in person or by the holder's attorney duly authorized in writing.   No service charge will be required for any such transfers and exchanges, but the Republic may require payment of a sum sufficient to cover any stamp or other tax or other governmental charge in connection therewith.   The Fiscal Agent shall not be required to register any transfer or exchange of any Registered Global Bond during the period from any Regular Record Date to the corresponding Interest Payment Date.

        No provision of this Registered Global Bond or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic, which is absolute and unconditional, to pay the principal of and interest on this Registered Global Bond at the time, place, and rate, and in the coin or currency, herein prescribed.

        The Republic, the Fiscal Agent and any agent of the Republic or the Fiscal Agent may treat the holder in whose name this Registered Global Bond is registered as the absolute owner hereof for all purposes, whether or not this Registered Global Bond be overdue, and none of the Republic, the Fiscal Agent or any such agent shall be affected by notice to the contrary.   All payments to or on the order of the registered holder of this Registered Global Bond are valid and effectual to discharge the liability of the Republic and the Fiscal Agent and any Paying Agent hereon to the extent of the sum or sums paid.

        Claims against the Republic for payment in respect of the Bonds and interest payments thereon shall be

9

prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

The Republic and the Fiscal Agent may at any time or from time to time, without notice to or the consent of the registered holder of any Bond, enter into one or more agreements supplemental to the Fiscal Agency Agreement to create and issue further bonds ranking pari passu with the Bonds in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further bonds or except for the first payment of interest following the issue date of such further bonds) and so that such further bonds shall be consolidated and form a single series with the Bonds and shall have the same terms as to status, redemption or otherwise as the Bonds.

A meeting of registered holders of Bonds may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Bonds to be made, given or taken by registered holders of Bonds or to modify, amend or supplement the terms of the Bonds or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of holders of Bonds for any such purpose to be held at such time and at such place in the Borough of Manhattan, The City of New York as the Fiscal Agent shall determine. Notice of every meeting of regis-tered holders of Bonds, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided herein, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Bonds then outstanding shall have requested the Fiscal Agent to call a meeting of the regis-tered holders of Bonds for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

At any meeting of registered holders of Bonds duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66-2/3% in aggregate principal amount of the Bonds then outstanding (or of such other percentage as may be set forth herein with respect to the action being taken), or with the written consent of the registered holders of not less than 66-2/3%

10

in principal amount of all the Bonds at the time outstanding, the Republic may modify any of the terms or provisions contained in the Bonds in any way, provided that the consent of the registered holders of all the Bonds at the time outstanding is required if any such action would (A) change the due date for the payment of the principal of or any installment of interest on any Bond, (B) reduce the principal amount of any Bond, the portion of such principal amount which is payable upon acceleration of the maturity of such Bond or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Bonds is payable, (D) reduce the proportion of the principal amount of Bonds the vote or consent of the registered holders of which is necessary to modify, amend or supplement the Fiscal Agency Agreement or the terms and conditions of Bonds or to make, take or give any request, demand, authorization, direction, notice, consent, waiver, or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Bonds, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Bonds of the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the Fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Bonds. Any such modification, authorization or waiver shall be binding on the registered holders of Bonds and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Bonds as soon as practicable.

All notices to the registered holders of Bonds will be published in English in London, England in the Financial Times, in New York, New York in The Wall Street Journal, and, so long as the Bonds are listed on the Luxembourg Stock Exchange and the Stock Exchange of Hong Kong Limited, in Luxembourg in the Luxemburger Wort and in Hong Kong in the South China Morning Post, respectively. If at any time publication in any such newspaper is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in the Republic, as the

11

Republic shall determine.  Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York State or Federal court sitting in the Borough of Manhattan, New York City and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Bonds or the Fiscal Agency Agreement (a "Related Proceeding").  The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum.  The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

The Republic has in the Fiscal Agency Agreement agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, form attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity

to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Bonds to enforce or execute a Related Judgment.  The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Bonds and the Fiscal Agency Agreement and under no circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Bonds or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Registered Global Bond shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

13

IN WITNESS WHEREOF, the Republic of Argentina, pursuant to due authorization of law, has caused this Registered Global Bond to be duly executed by an authorized representative.

DATED:

THE REPUBLIC OF ARGENTINA

By:_____

FISCAL AGENT'S CERTIFICATE OF AUTHENTICATION

This is one of the Bonds of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

Bankers Trust Company,
  as Fiscal Agent

By_____
  Authorized Signatory

14

FOR VALUE RECEIVED, the undersigned hereby sells,
assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

_____

_____

the within Registered Global Bond, and all rights
thereunder, hereby irrevocably constituting and appointing

_____ attorney to
transfer said Registered Global Bond on the books of the
Republic, with full power of substitution in the premises.

Dated:_____         _____
                                    Signature of transferor

Signature of transferor guaranteed by:_____

NOTE:  The signature to this assignment must correspond
with the name as written upon the face of the within
Registered Global Bond in every particular without
alteration or enlargement or any change whatsoever and must
be guaranteed by a commercial bank or trust company having
its principal office in The City of New York or by a member
of the New York Stock Exchange.

15

RECD S.E.C.

i 2 4 1994

016

FISCAL AGENCY AGREEMENT

between

THE REPUBLIC OF ARGENTINA

and

BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

# TABLE OF CONTENTS

                                                                    Page

1.   Securities Issuable in Series . . . . . . . . . . . . . . .    1
2.   Appointment of Fiscal Agent; Paying Agents . . . . . . . .    3
3.   Authentication . . . . . . . . . . . . . . . . . . . . . .    3
4.   Registration, Transfers and Exchanges . . . . . . . . . .    4
5.   Global Securities . . . . . . . . . . . . . . . . . . . .    6
6.   Payment . . . . . . . . . . . . . . . . . . . . . . . . .    9
7.   Additional Amounts . . . . . . . . . . . . . . . . . . . .   11
8.   Mutilated, Destroyed, Stolen or Lost Certificates . . . .   11
9.   Redemption and Purchases . . . . . . . . . . . . . . . . .   12
10.  Cancellation and Destruction . . . . . . . . . . . . . . .   14
11.  Negative Pledge and Covenants . . . . . . . . . . . . . .   14
12.  Default; Acceleration of Maturity . . . . . . . . . . . .   17
13.  Limit on Liability; Acceptance of Appointment . . . . . .   19
14.  Expenses and Indemnity . . . . . . . . . . . . . . . . . .   20
15.  Successor Fiscal Agent . . . . . . . . . . . . . . . . . .   20
16.  Meetings of Holders of Securities; Modifications . . . . .   22
17.  Further Issues . . . . . . . . . . . . . . . . . . . . . .   26
18.  Reports . . . . . . . . . . . . . . . . . . . . . . . . .   26
19.  Forwarding of Notice; Inquiries . . . . . . . . . . . . .   27
20.  Listings . . . . . . . . . . . . . . . . . . . . . . . . .   27
21.  Notices . . . . . . . . . . . . . . . . . . . . . . . . .   27
22.  Consent to Service; Jurisdiction . . . . . . . . . . . . .   28
23.  Governing Law and Counterparts . . . . . . . . . . . . . .   29

24.  Headings . . . . . . . . . . . . . . . . . . . . .  29

Exhibit A - Form of Registered Security

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1. **Securities Issuable in Series.** (a) The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series"). The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement. The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation; (ix) the minimum denomination and any multiples thereof of the Securities of such Series, which may be in U.S. dollars, another foreign currency, units of two or more currencies or amounts determined by reference to an index; (x) the currency or currencies in which the principal, premium, if any, or interest on such Securities may be payable; (xi) the manner in which the amount of payments of principal, premium, if any, or interest on such Securities is to be determined and if such determination is to be made with reference to any index; (xii) any covenants or agreements of the Republic and events which give rise to the right of a holder of a Security of such Series to accelerate the maturity of such Security other than such covenants, agreements or events specified herein; and (xiii) any other terms of the Securities of such Series. Securities may be issuable pursuant to warrants (if so provided in the text of such Securities) and the Fiscal Agent may act as warrant agent or in any similar capacity in connection therewith.

(b)  The Securities of a Series are to be issued in fully registered form only, without interest coupons, and will be issuable in the denominations specified in the text of the Securities of such Series, substantially in the form of Exhibit A hereto ("registered Securities").  The Securities of a Series may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistent herewith, be determined by the officials executing such Securities, as evidenced by their execution of such Securities.  All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein.

(c)  The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

2

(a) The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, New York, New York 10006 as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Securities, upon the terms and conditions set forth herein.  Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".  The Republic reserves the right to appoint different fiscal agents for different series of securities.

(b) The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the applicable payment of principal, premium, if any, and interest or Additional Amounts (as defined in Section 7 hereof), if any, on the Securities at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Security is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.  The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.  The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Securities on terms previously approved in writing by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.    Authentication.   (a)  The Fiscal Agent shall, upon delivery of the Securities to it by the Republic, and a written order or orders to authenticate and deliver Securities in a stated aggregate principal amount, (i) authenticate and register not more than said aggregate principal amount of Securities and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Securities and deliver them in accordance with the provisions of Sections 4, 5 and 9 of this Agreement.  The total principal amount of the Securities to be issued and outstanding at any time shall not be limited hereby.

(b) The Fiscal Agent may, with the prior written consent of the Republic, appoint by an instrument or instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a series
and, with such consent, vary or terminate any such
appointment upon written notice and approve any change in
the office through which any authenticating agent acts.  The
Republic (by written notice to the Fiscal Agent and the
authenticating agent whose appointment is to be terminated)
may also terminate any such appointment at any time.  The
Fiscal Agent hereby agrees to solicit written acceptances
from the entities concerned (in form and substance
satisfactory to the Republic) of such appointments.  In its
acceptance of such appointment, each such authenticating
agent shall agree to act as an authenticating agent pursuant
to the terms and conditions of this Agreement.

(c)  Until definitive Securities of a Series are
prepared, the Republic may execute, and there shall be
authenticated and delivered in accordance with the
provisions hereof (in lieu of definitive Securities of such
Series), temporary Securities of such Series.  Such
temporary Securities of a Series shall be subject to the
same limitations and conditions and entitled to the same
rights and benefits as definitive Securities of such Series,
except as provided herein or therein.  Temporary Securities
of a Series shall be exchangeable for definitive Securities
of such Series when such definitive Securities are available
for delivery; and upon the surrender for exchange of such
temporary Securities of a Series, the Republic shall execute
and there shall be authenticated and delivered, in
accordance with the provisions of Sections 3 and 4 hereof,
in exchange for such temporary Securities of a Series, a
like aggregate principal amount of definitive Securities of
such Series and of like tenor.  The Republic shall pay all
charges, including (without limitation) stamp and other
taxes and governmental charges, incident to any exchange of
temporary Securities for definitive Securities.  All
temporary Securities shall be identified as such and shall
describe the right of the holder thereof to effect an
exchange for definitive Securities and the manner in which
such an exchange may be effected.

4.  Registration, Transfers and Exchanges.  (a)
The Fiscal Agent, as agent of the Republic for such purpose,
will at all times keep at the office of the Fiscal Agent in
the Borough of Manhattan, The City of New York, a register
or registers for the registration and registration of
transfers and exchanges of Securities, in which shall be
entered the names and addresses of the registered holders of
Securities and the particulars of the Securities held by
such registered holders.  Subject to Section 5 hereof, upon
surrender for transfer of any Security of any Series at said
office, the Fiscal Agent shall authenticate, register and

4

deliver in the name of the transferee or transferees a new
Security or Securities of any Series for a like aggregate
principal amount.   Subject to Section 5 hereof, upon
surrender of any Security at said office for exchange, the
Fiscal Agent shall authenticate, register and deliver in
exchange for such Security a new Security or new Securities
of the appropriate authorized denomination(s) and for a like
aggregate principal amount in accordance with the provisions
of the Securities.

(b)   All new Securities authenticated and
delivered by the Fiscal Agent upon registration of transfer
or in exchange for Securities of other denominations shall
be so dated that neither gain nor loss of interest shall
result from such registration of transfer or exchange.

(c)   All Securities presented or surrendered for
registration of transfer, exchange or payment shall be
accompanied by a written instrument or instruments of
transfer in form satisfactory to the Fiscal Agent, duly
executed by the registered holder or its attorney duly
authorized in writing and with the signatures thereon duly
guaranteed by a commercial bank or trust company having its
principal office in The City of New York or by a member of
the New York Stock Exchange.

(d)   The Fiscal Agent shall not impose any service
charge on the registered holder on any such registration,
transfer or exchange of Securities; however, the Republic
may require of the party requesting such transfer or
exchange, as a condition precedent to the exercise of any
right of transfer or exchange contained in this Agreement or
in the Securities, the payment of a sum sufficient to cover
any stamp or other tax or other governmental charge payable
in connection therewith.

(e)   The Republic, the Fiscal Agent and any Paying
Agent may treat the person in whose name any Security is
registered as the owner of such Security for the purpose of
receiving payment of principal of and interest on such
Security, and all other purposes whatsoever, whether or not
such Security be overdue, and none of the Republic, the
Fiscal Agent or any Paying Agent shall be affected by any
notice to the contrary and any such payment shall be a good
and sufficient discharge to the Republic, the Fiscal Agent
and any Paying Agent for the amount so paid.

(f)   The Fiscal Agent shall not be required to
register any transfer or exchange of Securities during the
period from the Regular Record Date (as defined in such
Securities) to the Interest Payment Date (as defined in such

5

Securities and for the purposes of any interest payment
made in accordance with Section 6 hereof, such payment shall
be made to those persons in whose names the Securities are
registered on such Regular Record Date.

     5.    **Global Securities**. The Securities of any
Series may be issued in whole or in part in the form of one
or more global securities ("Global Securities") that will be
deposited with, or on behalf of, a depositary (the
"Depositary") relating to such Series. Global Securities
may be issued only in fully registered form and in either
temporary or definitive form. Unless and until it is
exchanged in whole or in part for Securities in definitive
form, a Global Security may not be transferred except as a
whole by the Depositary for such Global Security to a
nominee of such Depositary or by a nominee of such
Depositary to such Depositary or another nominee of such
Depositary or by such Depositary or any nominee of such
Depositary to a successor Depositary or any nominee of such
successor.

     Upon the issuance of a Global Security, the
Depositary for such Global Security will credit on its book-
entry registration and transfer system the respective
principal amounts of the Securities represented by such
Global Security to the accounts of Persons that have
accounts with such Depositary ("Participants"). The
accounts to be credited shall be designated by the agents or
underwriters with respect to such Securities or by the
Republic if such Securities are offered and sold directly by
the Republic. Ownership of beneficial interests in a Global
Security will be limited to Participants or Persons that may
hold interests through Participants. Ownership of
beneficial interests in a Global Security will be shown on,
and the transfer of that ownership will be effected only
through, records maintained by the applicable Depositary
(with respect to interests of Participants) and records of
Participants (with respect to interests of Persons who hold
through Participants). Owners of beneficial interests in a
Global Security (other than Participants) will not receive
written confirmation from the applicable Depositary of their
purchase. Each beneficial owner is expected to receive
written confirmation providing details of the transaction,
as well as periodic statements of its holdings, from the
Depositary (if such beneficial owner is a Participant) or
from the Participant through which such beneficial owner
entered into the transaction (if such beneficial owner is
not a Participant). The laws of some states require that
certain purchasers of securities take physical delivery of
such securities in definitive form. Such limits and such

laws may impair the ability to own, pledge or transfer
beneficial interests in a Global Security.

So long as the Depositary for a Global Security,
or its nominee, is the registered owner of such Global
Security, such Depositary or such nominee, as the case may
be, will be considered the sole owner or holder of the
Securities represented by such Global Security for all
purposes under this Agreement. Except as specified below or
with respect to the terms of Securities of a Series, owners
of beneficial interests in a Global Security will not be
entitled to have any of the individual Securities
represented by such Global Security registered in their
names, and will not receive or be entitled to receive
physical delivery of any such Securities in definitive form
and will not be considered the owners or holders thereof
under such Securities or this Agreement. Accordingly, each
Person owning a beneficial interest in a Global Security
must rely on the procedures of the Depositary for such
Global Security and, if such Person is not a Participant, on
the procedures of the Participant through which such Person
owns its interest, to exercise any rights of a holder under
the Securities or this Agreement. The Republic understands
that under existing industry practices, if the Republic
requests any action of holders, or an owner of a beneficial
interest in such Global Security desires to take any action
which a holder is entitled to take under the Fiscal Agency
Agreement, the Depositary for such Global Security would
authorize the Participants holding the relevant interests to
take such action, and such Participants would authorize
beneficial owners owning through such Participants to take
such action or would otherwise act upon the instructions of
beneficial owners holding through them.

Payments of principal of and any premium and any
interest on Securities registered in the name of a
Depositary or its nominee will be made to the Depositary or
its nominee, as the case may be, as the holder of the Global
Security representing such Securities. None of the
Republic, any Paying Agent or the Fiscal Agent, in its
capacity as registrar for such Debt Securities, will have
any responsibility or liability for any aspect of the
records relating to or payments made on account of
beneficial interests in a Global Security or for
maintaining, supervising or reviewing any records relating
to such beneficial interests.

The Republic expects that the Depositary for a
series of Securities or its nominee, upon receipt of any
payment of principal, premium or interest in respect of a
Global Security representing such Securities will credit

7

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary.  The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name".  Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities.  If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the Securities held in the form of Global Securities.  In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be canceled by the Fiscal Agent.

securities in definitive registered form issued in exchange for the Global Securities pursuant to this section shall be registered in such names as the Depositary, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Fiscal Agent or the Republic. The Fiscal Agent shall deliver such Securities in definitive registered form to or as directed by the persons in whose names such definitive registered Securities are so registered and will direct all payments to be made in respect of such Securities in definitive registered form to the registered holders thereof on or after such exchange regardless of whether such exchange occurred after the record date for such payment.

All Securities in definitive registered form, issued upon the exchange of the Global Securities, shall be valid obligations of the Republic, evidencing the same debt, and entitled to the same benefits under this Agreement, as the Global Securities surrendered upon such exchange.

6.   Payment.   (a)   The Republic will pay to the Fiscal Agent, the amounts, at the times and for the purposes set forth herein and in the text of the Securities of a Series, not later than 1:00 p.m. New York City time to an account to be specified by the Fiscal Agent, on the day on which the same shall become due, all amounts to be paid on the Securities of such Series as required by the terms of the Securities, and the Republic hereby authorizes and directs the Fiscal Agent, from the funds so paid to it, to make payments in respect of the Securities in accordance with their terms and the provisions set forth below.  If any date for payment in respect of a Security is not a Business Day, such payment shall be made on the next following Business Day.  "Business Day" means a day on which banking institutions in The City of New York and at the applicable place of payment are not authorized or obligated by law or executive order to be closed.  The Fiscal Agent shall arrange directly with any Paying Agent who may have been appointed pursuant to the provisions of Section 2 hereof for the payment from funds so paid by the Republic of the principal of (and premium, if any) and any interest on the Securities of such Series as set forth herein and in the text of said Securities.  Notwithstanding the foregoing, where the terms of such Securities expressly so provide and the Republic so notifies the Fiscal Agent the Republic may provide directly a Paying Agent with funds for the payment of the principal thereof and premium and interest, if any, payable thereon under an agreement with respect to such funds containing substantially the same terms and conditions set forth in this Section; and the Fiscal Agent shall have

no responsibility with respect to any funds so provided by
the Republic to any such Paying Agent.

(b)  All payments with respect to the Global
Securities shall be made by the Fiscal Agent to the
Depositary in accordance with the regular procedures
established from time to time by the Depositary.

(c)  Payment of principal and premium, if any, in
respect of Securities in definitive registered form issued
pursuant hereto shall be made at the office of the Fiscal
Agent in the Borough of Manhattan, The City of New York, or
at the office of any Paying Agent appointed by the Republic
for such purpose pursuant to this Agreement against
surrender of such Securities.  Any interest on Securities of
a Series shall be paid, unless otherwise provided in the
text of the Securities of such Series, to the persons in
whose names such Securities are registered on the register
maintained for such purposes at the close of business on the
record dates designated in the text of the Securities of
such Series.  If so provided with respect to the Securities
of a Series, payments of interest due prior to or on
maturity may be made by forwarding by post or otherwise
delivering a check to the registered addresses of registered
holders of Securities, or, at the option of the Republic,
otherwise transferring funds to the registered holders of
the Securities.  Such check shall be made payable to the
order of the registered holder or, in the case of joint
registered holders, to the order of all such joint holders
(failing instructions from them to the contrary) and shall
be sent to the address of that one of such joint holders
whose name stands first in the register as one of such joint
holders.  The Fiscal Agent shall mail or otherwise deliver
such checks to the names and addresses of registered holders
of Securities sufficiently in advance of the relevant due
date for payment that receipt of such checks by registered
holders on or before the due date is reasonably assured.

(d)  All money paid to the Fiscal Agent under
Section 6(a) of this Agreement shall be held by it in a
separate account from the moment when such money is received
until the time of actual payment, in trust for the
registered holders of Securities to be applied by the Fiscal
Agent to payments due on the Securities at the time and in
the manner provided for in this Agreement and the
Securities.  Any money deposited with the Fiscal Agent for
the payment in respect of any Security remaining unclaimed
for two years after such principal or interest shall have
become due and payable shall be repaid to the Republic upon
written request without interest, and the registered holder

10

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

7. **Additional Amounts.** All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

(a) to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

(b) presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment. Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

**8.   Mutilated, Destroyed, Stolen or Lost Certificates.** (a)  In case any Security certificate is mutilated, defaced, destroyed, stolen or lost, application for replacement shall be made to the Fiscal Agent who shall promptly transmit such application to the Republic.  Such application shall be accompanied by the mutilated or defaced certificate or receipt of proof, satisfactory to the Republic in its discretion, of the destruction, theft or loss of the certificate, and upon receipt by it of an indemnity satisfactory to the Republic and the Fiscal Agent, the Republic shall execute a new certificate of like tenor, and upon written instructions from the Republic the Fiscal Agent shall thereupon cancel the mutilated or defaced certificate if applicable and authenticate, register and deliver such new certificate in exchange for the mutilated or defaced certificate or in substitution for the destroyed, stolen or lost certificate.  Such new certificate will be so dated that neither gain nor loss in interest will result from such exchange or substitution.  All expenses associated with procuring such indemnity and with the preparation, authentication and delivery of a new certificate will be borne by the registered holder of the mutilated, defaced, destroyed, stolen or lost certificate.

(b)  Whenever any Security, alleged to have been lost, stolen or destroyed in replacement for which a new Security has been issued, is presented to the Fiscal Agent or any Paying Agent for payment at maturity or at redemption or for registration of transfer or exchange, the Fiscal Agent or the Paying Agent, as the case may be, shall immediately notify the Republic in respect thereof and shall deal with such Security in accordance with the Republic's instructions.

**9.   Redemption and Purchases.** (a)  Unless otherwise permitted by the terms of the Securities of a Series, Securities will not be redeemable prior to maturity at the option of the Republic or the registered holders thereof.

(b)  The Republic hereby authorizes and directs the Fiscal Agent to administer the sinking fund with respect to the Securities of any Series having a mandatory sinking fund or similar provision in accordance with the provisions set forth in the terms of the Securities of such Series.  If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series at its option, then the Republic shall, unless otherwise provided in the terms of the Securities of such Series, give written notice to the Fiscal Agent of the principal amount of Securities of such Series to be so redeemed not less than 60 days prior to

the optional redemption date.  If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series only upon the occurrence or satisfaction of a condition or conditions precedent thereto, then prior to the giving of notice of redemption of the Securities of such Series, the Republic shall deliver to the Fiscal Agent a certificate stating that the Republic is entitled to effect such redemption and setting forth in reasonable detail a statement of facts showing that such condition or conditions precedent have occurred or been satisfied.  If the provisions of the Securities of a Series obligate the Republic at the request of the holders to redeem Securities of such Series upon the occurrence of certain events (each hereinafter referred to as a "Redemption Event"), then the Republic shall promptly deliver written notice to the Fiscal Agent that a Redemption Event has occurred.  Promptly after receiving written notice of a Redemption Event, the Fiscal Agent shall deliver written notice to each holder of the Securities of such Series stating that a Redemption Event has occurred and that such holder may tender its Securities by delivering written notice of its election to tender for redemption, together with the certificate or certificates for the Securities to be redeemed, to the Fiscal Agent within 60 days of the Fiscal Agent's notice (hereinafter referred to as the "Option Period").  Thereafter, the Republic shall (i) in the manner provided in the provisions of the Securities of such Series and as contemplated by Section 6 hereof, arrange with the Fiscal Agent (and each Paying Agent for the purpose, if applicable) for the provision of funds sufficient to make payments to such holders in respect of such redemptions, and (ii) redeem such Securities within 60 days of the expiration of the Option Period.  The Fiscal Agent shall provide the Republic from time to time during and upon expiration of the Option Period with reasonable detailed information as to Securities tendered for redemption.

All notices of redemption of or Redemption Events relating to Securities of a Series to the holders thereof shall be made in the name and at the expense of the Republic and shall be given in accordance with the provisions applicable thereto set forth in the terms of the Securities of such Series.

Whenever less than all the Securities of a Series with the same interest rate and maturity at any time outstanding are to be redeemed at the option of the Republic, the particular Securities of such Series with such interest rate and maturity to be redeemed shall be selected not more than 60 days prior to the redemption date by the Fiscal Agent from the outstanding Securities of such Series

not previously called for redemption by such usual method as
the Fiscal Agent shall deem fair and appropriate, which
method may provide for the selection for redemption of
portions of the principal amount of registered Securities of
such Series the minimum denominations of which, if any, will
be specified in the terms of the Securities of such Series.
Upon any partial redemption of a registered Security of a
Series, the Fiscal Agent shall authenticate and deliver in
exchange therefor one or more registered Securities of such
Series, of any authorized denomination and like tenor as
requested by the holder thereof, in aggregate principal
amount equal to the unredeemed portion of the principal of
such Security.

(c)  The Republic may at any time purchase
Securities at any price in the open market or otherwise,
provided that in any such case such purchase or purchases
are in compliance with all relevant laws, regulations and
directives.  Securities so purchased by the Republic, may,
at the Republic's discretion, be held, resold or surrendered
to the Fiscal Agent for cancellation.  The Securities so
purchased, while held by or on behalf or for the benefit of
the Republic shall not entitle the registered holder thereof
to vote at any meetings of registered holders of Securities
and shall not be deemed to be outstanding for the purposes
of calculating quorums at meetings of the registered holders
of the Securities.  Notwithstanding the foregoing, the
Republic will not acquire any beneficial interest in any
Securities unless it gives prior written notice of each
acquisition to the Fiscal Agent.  The Fiscal Agent will be
entitled to rely without further investigation on any such
notification (or lack thereof).

(d)  If the Republic elects to cancel any
Securities when Securities have been issued in the form of a
Global Security, it may request the Fiscal Agent to instruct
the Depositary to reduce the outstanding aggregate principal
amount of the Global Securities in accordance with the
regular procedures of the Depositary in effect at such time.

10.  Cancellation and Destruction.  All Securities
which are paid at maturity or upon earlier repurchase, or
are mutilated, defaced or surrendered in exchange for other
certificates, shall be cancelled by the Fiscal Agent who
shall register such cancellation.  The Fiscal Agent shall,
as soon as practicable after the date of any such
cancellation, furnish the Republic with a certificate or
certificates stating the serial numbers and total number of
Securities that have been cancelled.  The Fiscal Agent shall
destroy all cancelled Securities in accordance with the
instructions of the Republic and shall furnish to the

14

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Securities destroyed hereunder.

11. **Negative Pledge and Covenants**. So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i)  any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii)  any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii)  any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

15

(iv)   any Lien in existence on the date of this Agreement;

(v)   any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)   any Lien on any of the Par and Discount Bonds; and

(vii)   any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

16

"Domestic Foreign Currency Indebtedness" means (i)
the following indebtedness:   (a) Bonos del Tesoro issued
under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos
de Consolidación issued under Law No. 23,982 and Decree No.
2140/91, (c) Bonos de Consolidación de Deudas Previsionales
issued under Law No. 23,982 and Decree No. 2140/91, (d)
Bonos de la Tesorería a 10 Años de Plazo issued under Decree
No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería
a 5 Años Plazo issued under Decree No. 211/92 nd Decree No.
526/92, (f) Ferrobonos issued under Decree No. 52/92 and
Decree No. 526/92 and (g) Bonos de Consolidación de Regalías
Hidrocarburíferas a 16 Años de Plazo issued under Decree No
2284/92 and Decree No. 54/93; (ii) any indebtedness issued
in exchange, or as replacement, for the indebtedness
referred to in (i) above; and (iii) any other indebtedness
payable by its terms, or which at the option of the holder
thereof may be payable, in a currency other than the lawful
currency of the Republic of Argentina which is (a) offered
exclusively within the Republic of Argentina or (b) issued
in payment, exchange, substitution, discharge or replacement
of indebtedness payable in the lawful currency of the
Republic of Argentina; provided that in no event shall the
following indebtedness be deemed to constitute "Domestic
Foreign Currency Indebtedness":   (1) Bonos Externos de la
República Argentina issued under Law No. 19,686 enacted on
June 15, 1972 and (2) any indebtedness issued by the
Republic in exchange, or as replacement, for any
indebtedness referred to (1) above.

12.  Default; Acceleration of Maturity.  If any of
the following events ("Events of Default") with respect to
the Securities of any Series occurs and is continuing:

(a)  Non-Payment:  the Republic fails to pay any
principal of any of the Securities of such Series when due
and payable or fails to pay any interest on any of the
Securities of such Series when due and payable and such
failure continues for a period of 30 days; or

(b)  Breach of Other Obligations:  the Republic
does not perform or comply with any one or more of its other
obligations in the Securities of such Series or in this
Agreement, which default is incapable of remedy or is not
remedied within 90 days after written notice of such default
shall have been given to the Republic by the Fiscal Agent;
or

(c)  Cross Default:  any event or condition shall
occur which results in the acceleration of the maturity
(other than by optional or mandatory prepayment or
redemption) of the Securities of any other Series or of any

17

Public External Indebtedness of the Republic having an
aggregate principal amount of U.S. $30,000,000 or more, or
any default in the payment of principal of, or premium or
prepayment charge (if any) or interest on, the Securities of
any other Series or any such Public External Indebtedness
having an aggregate principal amount of U.S. $30,000,000 or
more, shall occur when and as the same shall become due and
payable, if such default shall continue for more than the
period of grace, if any, originally applicable thereto; or

(d) Moratorium:  a moratorium on the payment of
principal of, or interest on, the Public External
Indebtedness of the Republic shall be declared by the
Republic or;

(e) Validity:  the validity of the Securities of
such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate
principal amount of the Securities of such Series by notice
in writing to the Republic at the specified office of the
Fiscal Agent shall declare the principal amount of all the
Securities of such Series to be due and payable immediately,
and, in the case of (a) and (d) above, each holder of
Securities of such Series may by such notice in writing
declare the principal amount of Securities of such Series
held by it to be due and payable immediately, and upon any
such declaration the same shall become and shall be
immediately due and payable upon the date that such written
notice is received by the Republic unless prior to such date
all Events of Default in respect of all the Securities of
such Series shall have been cured; provided that in the case
of (b), (d) and (e) above, such event is materially
prejudicial to the interests of the holders of the
Securities of such Series, and provided further, that if, at
any time after the principal of the Securities of such
Series shall have been so declared due and payable, and
before any sale of property under any judgment or decree for
the payment of the monies due shall have been obtained or
entered as hereinafter provided, the Republic shall pay or
shall deposit with the Fiscal Agent a sum sufficient to pay
all matured amounts of interest and principal upon all the
Securities which shall have become due and otherwise than
solely by declaration (with interest on overdue amounts of
interest, to the extent permitted by law, and on such
principal of each of the Securities at the rate of interest
applicable thereto, to the date of such payment or deposit;
and the expenses of the Fiscal Agent, and reasonable
compensation to the Fiscal Agent, its agents, legal
advisers, and any and all defaults under the Securities of
such Series, other than the non-payment of principal on the

18

Securities of such Series which shall have become due, solely
by declaration, shall have been remedied, then, and in every
such case, the holders of 75 percent in aggregate principal
amount of the Securities of such Series then outstanding,
after a meeting of holders of Securities held in accordance
with the procedures described in Section 16 below, by
written notice to the Republic at the specified office of
the Fiscal Agent, may on behalf of the holders of all of the
Securities of such Series waive all defaults and rescind and
annul such declaration and its consequences: but no such
waiver or rescission and annulment shall extend to or shall
affect any subsequent default, or shall impair any right
consequent thereon.

13.  (a)  Limit on Liability.  In acting under
this Agreement the Fiscal Agent and any Paying Agent are
acting solely as agents of the Republic and do not assume
any obligation or relationship of agency or trust for or
with any of the holders of the Securities, except that all
funds held by the Fiscal Agent for payment of principal or
interest shall be held in trust, subject to the provisions
of Section 6.

(b)  Acceptance of Appointment.  The Fiscal Agent
and each Paying Agent accepts its obligations set forth in
or arising under this Agreement, the Paying Agency
Agreements and the Securities upon the terms and conditions
hereof and thereof, including the following, to all of which
the Republic agrees and to all of which the holders of the
Securities shall be subject:

(i)  the Fiscal Agent may consult as to legal
matters with lawyers selected by it, who may be
employees of or regular independent counsel to the
Republic, and the Fiscal Agent shall be protected and
shall incur no liability for action taken, or suffered
to be taken, with respect to such matters in good faith
and in accordance with the opinion of such lawyers; and

(ii)  the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Securities,
with the same rights that it or they would have if it
were not the Fiscal Agent or a Paying Agent hereunder,
or they were not such officers, directors, or
employers, and may engage or be interested in any
financial or other transaction with the Republic and
may act on, or as depository, trustee or agent for, any
committee or body of holders of Securities or other
obligations of the Republic as freely as if it were not

19

the Fiscal Agent or a Paying Agent hereunder or they
were not such officers, directors, or employees.

14. **Expenses and Indemnity.** (a) In connection
with the Fiscal Agent's appointment and duties as Fiscal
Agent, the Republic will pay the Fiscal Agent compensation
agreed upon by them. The Republic will indemnify the Fiscal
Agent and each Paying Agent against any loss or liability
and agrees to pay or reimburse the Fiscal Agent and each
Paying Agent for any reasonable expense, which loss,
liability or reasonable expense may be incurred by the
Fiscal Agent or any Paying Agent by reason of, or in
connection with, the Fiscal Agent's or any Paying Agent's
appointment and duties as such, except as such result from
the negligence, bad faith or wilful misconduct of the Fiscal
Agent or any Paying Agent or their respective directors,
officers, employees or agents. In addition, the Republic
shall pursuant to arrangements separately agreed upon by the
Republic and the Fiscal Agent, transfer to the Fiscal Agent,
upon presentation of substantiating documentation
satisfactory to the Republic, amounts sufficient to
reimburse the Fiscal Agent for certain out-of-pocket
expenses reasonably incurred by it and by any Paying Agent
in connection with their services. The obligation of the
Republic under this paragraph shall survive payment of the
Securities and resignation or removal of the Fiscal Agent.

(b) The Fiscal Agent and each Paying Agent agrees
to indemnify and hold harmless the Republic against all
direct claims, actions, demands, damages, costs, losses and
liabilities (excluding consequential and punitive damages)
arising out of or relating to the bad faith or wilful
misconduct of the Fiscal Agent or any Paying Agent or their
respective directors, officers, employees or agents.

15. **Successor Fiscal Agent.** (a) The Republic
agrees that there shall at all times be a Fiscal Agent
hereunder, and that the Fiscal Agent shall be a bank or
trust company organized and doing business under the laws of
the United States of America or of the State of New York, in
good standing and having a place of business in the Borough
of Manhattan, The City of New York, and authorized under
such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal
Agent hereunder may be merged or converted, or any
corporation with which the Fiscal Agent may be consolidated,
or any corporation or bank resulting from any merger,
conversion or consolidation to which the Fiscal Agent shall
sell or otherwise transfer all or substantially all of the
corporate trust business of the Fiscal Agent, provided that

20

it shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, but subject to prior notice to and the prior approval of the Republic.

(b)  The Fiscal Agent may at any time resign by giving written notice to the Republic of its resignation, specifying the date on which its resignation shall become effective (which shall not be less than 120 days after the date on which such notice is given unless the Republic shall agree to a shorter period); provided that no such notice shall expire less than 30 days before or 30 days after the due date for any payment of principal or interest in respect of the Securities.  The Republic may remove the Fiscal Agent at any time by giving written notice to the Fiscal Agent specifying the date on which such removal shall become effective.  Such resignation or removal shall only take effect upon the appointment by the Republic of a successor Fiscal Agent and upon the acceptance of such appointment by such successor Fiscal Agent.  Any Paying Agent may resign or may be removed at any time upon like notice, and the Republic in any such case may appoint in substitution therefor a new Paying Agent or Paying Agents.

(c)  The appointment of the Fiscal Agent hereunder shall forthwith terminate, whether or not notice of such termination shall have been given, if at any time the Fiscal Agent becomes incapable of performing its duties hereunder, or is adjudged bankrupt or insolvent, or files a voluntary petition on bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a liquidator or receiver of all or any substantial part of its property or admits in writing its inability to pay or meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for the winding up or dissolution of the Fiscal Agent, or if a liquidator or receiver of the Fiscal Agent of all or any substantial part of its property is appointed, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency law or if any public officer takes charge or control of the Fiscal Agent or its property or affairs for the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such resignation or removal of the Fiscal Agent, or if the Fiscal Agent shall become unable to act as such or shall cease to be qualified as aforesaid, the Republic shall appoint a successor Fiscal Agent, qualified as aforesaid.  Upon the appointment of a successor Fiscal Agent and its acceptance

21

of such appointment, the retiring Fiscal Agent shall, at the
direction of the Republic and upon payment of its
compensation and expenses then unpaid, deliver and pay over
to its successor any and all securities, money and any other
properties then in its possession as Fiscal Agent and shall
thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder
shall execute, acknowledge and deliver to its predecessor
and to the Republic an instrument accepting such appointment
hereunder, and thereupon such successor without any further
act, deed or conveyance, shall become vested with all the
authority, rights, powers, trusts, immunities, duties and
obligations of such predecessor, with like effect as if
originally named Fiscal Agent hereunder.

(e)  If the Fiscal Agent resigns or ceases to act
as the Republic's fiscal agent in respect of the Securities
pursuant to Section 15(c) of this Agreement, the Fiscal
Agent shall only be entitled to annual fees otherwise
payable to it under this Agreement on a pro rata basis for
that period since the most recent anniversary of this
Agreement during which the Fiscal Agent has acted as fiscal
agent hereunder.  In the event that the Fiscal Agent ceases
to act as the Republic's fiscal agent in respect of the
Securities for any other reason, the Fiscal Agent shall be
entitled to receive the full amount of the annual fees
payable to it in respect of the Securities pursuant to
Section 14 of this Agreement.

16.  **Meetings of Holders of Securities;
Modifications.**  (a)  A meeting of registered holders of
Securities of any Series may be called at any time and from
time to time to make, give or take any request, demand,
authorization, direction, notice, consent, waiver or other
action provided by this Agreement or the Securities of any
Series to be made, given or taken by registered holders of
Securities of any Series or to modify, amend or supplement
the terms of the Securities of any Series or this Agreement
as hereinafter provided.  The Fiscal Agent may at any time
call a meeting of registered holders of Securities of any
Series for any such purpose to be held at such time and at
such place as the Fiscal Agent shall determine.  Notice of
every meeting of registered holders of Securities of any
Series, setting forth the time and the place of such meeting
and in general terms the action proposed to be taken at such
meeting, shall be given as provided in the terms of the
Securities of any Series, not less than 30 nor more than 60
days prior to the date fixed for the meeting.  In case at
any time the Republic or the registered holders of at least
10% in aggregate principal amount of the Outstanding

22

this Section) shall have requested the Fiscal Agent to call
a meeting of the registered holders of Securities of any
Series for any such purpose, by written request setting
forth in reasonable detail the action proposed to be taken
at the meeting, the Fiscal Agent shall call such meeting for
such purposes by giving notice thereof.

To be entitled to vote at any meeting of
registered holders of Securities of any Series, a person
shall be a registered holder of Outstanding Securities of
any Series or a person duly appointed by an instrument in
writing as proxy for such a holder. Any person appointed by
an instrument in writing as proxy for a registered holder
need not be a registered holder of Outstanding Securities of
any Series. At any meeting each registered holder shall be
entitled to one vote for each of those amounts held by such
holder which represent the lowest denomination in which
Securities of such Series as to which such holder is a
holder may be transferred. The persons entitled to vote a
majority in principal amount of the Outstanding Securities
of any Series shall constitute a quorum. At the reconvening
of any meeting adjourned for a lack of a quorum, the persons
entitled to vote 25% in principal amount of the Outstanding
Securities of any Series shall constitute a quorum for the
taking of any action set forth in the notice of the original
meeting. The Fiscal Agent may make such reasonable and
customary regulations as it shall deem advisable for any
meeting of registered holders of Securities of any Series
with respect to the appointment of proxies in respect of
registered holders of Securities, the record date for
determining the registered holders of Securities who are
entitled to vote at such meeting (which date shall be set
forth in the notice calling such meeting hereinabove
referred to and which shall be not less than 30 nor more
than 90 days prior to such meeting, the adjournment and
chairmanship of such meeting) the appointment and duties of
inspectors of votes, the submission and examination of
proxies, certificates and other evidence of the right to
vote, and such other matters concerning the conduct of the
meeting as it shall deem appropriate.

(b)  (i) At any meeting of registered holders of
Securities of a Series duly called and held as specified
above, upon the affirmative vote, in person or by proxy
thereunto duly authorized in writing, of the registered
holders of not less than 66 2/3% in aggregate principal
amount of the Securities of any Series then Outstanding (or
of such other percentage as may be set forth in the
Securities of any Series with respect to the action being
taken), or (ii) with the written consent of the owners of

23

not less than 66 2/3% in aggregate principal amount of the
Securities of any Series then Outstanding (or of such other
percentage as may be set forth in the text of the Securities
of any Series with respect to the action being taken), the
Republic and the Fiscal Agent may modify, amend or
supplement the terms of the Securities of any Series or this
Agreement, in any way, and the registered holders of
Securities of any Series may make, take or give any request,
demand, authorization, direction, notice, consent, waiver or
other action provided by this Agreement or the Securities of
any Series to be made, given, or taken by registered holders
of Securities of any Series; provided, however, that no such
action may, without the consent of the registered holder of
each Security of such Series, (A) change the due date for
the payment of the principal of (or premium, if any,) or any
installment of interest on any Security of such Series, (B)
reduce the principal amount of any Security of such Series,
the portion of such principal amount which is payable upon
acceleration of the maturity of such Security, the interest
rate thereon or the premium payable upon redemption thereof,
(C) change the coin or currency in which or the required
places at which payment with respect to interest, premium or
principal in respect of Securities of such Series is
payable, (D) amend the definition of Redemption Event in the
Securities of such Series or the procedures provided
therefore, (E) shorten the period during which the Republic
is not permitted to redeem the Securities of such Series if,
prior to such action, the Republic is not permitted to do
so, (F) reduce the proportion of the principal amount of
Securities of such Series the vote or consent of the holders
of which is necessary to modify, amend or supplement this
Agreement or the terms and conditions of the Securities of
such Series or to make, take or give any request, demand,
authorization, direction, notice, consent, waiver or other
action provided hereby or thereby to be made, taken or
given, or (G) change the obligation of the Republic to pay
additional amounts.

The Fiscal Agent and the Republic may agree,
without the consent of the registered holders of Securities
of any Series, to (i) any modification of any provisions of
the Fiscal Agency Agreement which is of a formal, minor or
technical nature or is made to correct a manifest error and
(ii) any other modification (except as mentioned in this
Agreement), and any waiver or authorization of any breach or
proposed breach, of any of the provisions of this Agreement
which is in the opinion of the Fiscal Agent not materially
prejudicial to the interests of the registered holders of
Securities. Any such modification, authorization or waiver
shall be binding on the registered holders of Securities of
any Series and, if the Fiscal Agent so requires, such

24

Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent
of the registered holders of the Securities of any Series to
approve the particular form of any proposed modification,
amendment, supplement, request, demand, authorization,
direction, notice, consent, waiver or other action, but it
shall be sufficient if such vote or consent shall approve
the substance thereof.

(o)  Any instrument given by or on behalf of any
registered holder of a Security in connection with any
consent to or vote for any such modification, amendment,
supplement, request, demand, authorization, direction,
notice, consent, waiver or other action will be irrevocable
once given and will be conclusive and binding on all
subsequent registered holders of such Security or any
Security issued directly or indirectly in exchange or
substitution therefor or in lieu thereof.  Any such
modification, amendment, supplement, request, demand,
authorization, direction, notice, consent, waiver or other
action with respect to the Securities of a Series will be
conclusive and binding on all registered holders of
Securities of such Series, whether or not they have given
such consent or cast such vote, and whether or not notation
of such modification, amendment, supplement, request,
demand, authorization, direction, notice, consent, waiver or
other action is made upon the Securities of such Series.
Notice of any modification or amendment or, supplement to,
or request, demand, authorization, direction, notice,
consent, waiver or other action with respect to the
Securities of such Series or this Agreement (other than for
purposes of curing any ambiguity or of curing, correcting or
supplementing any defective provision hereof or thereof)
shall be given to each registered holder of Securities of
such Series, in all cases as provided in the Securities of
such Series.

Securities of any Series authenticated and
delivered after the effectiveness of any such modification,
amendment, supplement, request, demand, authorization,
direction, notice, consent, waiver or other action with
respect to such Series may bear a notation in the form
approved by the Fiscal Agent and the Republic as to any
matter provided for in such modification, amendment,
supplement, request, demand, authorization, direction,
notice, consent, waiver or other action.  New Securities
modified to conform, in the opinion of the Fiscal Agent and
the Republic, to any such modification, amendment,
supplement, request, demand, authorization, direction,

25

the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Securities of any Series.

(d)  For purposes of the provisions of this Agreement and the Securities of any Series, any Security authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)  Securities of any Series theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

(ii)  Securities of any Series which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof, premium, if any, and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Securities of any Series are present at a meeting of registered holders of Securities for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Securities of any Series owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

17.  Further Issues.  The Republic may from time to time, without notice to or the consent of the registered holders of the Securities of a Series, create and issue further securities ranking pari passu with the Securities of such Series in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further securities or except for the first payment of interest following the issue date of such further securities) and so that such further securities shall be consolidated and form a single series with the Securities of such Series and shall have the same terms as to status, redemption or otherwise as the Securities.

18.  Reports.  (a)  The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under

necessary, inspect books and records maintained by the
Fiscal Agent pursuant to this Agreement, if any.

(b)  The Fiscal Agent shall (on behalf of the
Holders) submit such reports or information as may be
required from time to time in relation to the issue and
purchase of Securities by applicable law, regulations and
guidelines promulgated by the United States government.

(c).  The Republic covenants to notify the Fiscal
Agent in writing immediately on becoming aware of any Event
of Default or any event or circumstance which could with the
giving of notice or lapse of time become an Event of Default
(a "Potential Event of Default").

(d)  The Republic will send to the Fiscal Agent,
on or before December 31 in each year (beginning with
December 31, 1994), and within 14 days after any written
notice by the Fiscal Agent, a certificate of the Republic
signed by a duly authorized official of the Republic to the
effect that, having made all reasonable inquiries, to the
best knowledge of such duly authorized official, no Event of
Default or Potential Event of Default has occurred and is
continuing on the date of such certificate or, if an Event
of Default or a Potential Event of Default has occurred, the
circumstances surrounding it and the steps that the Republic
has taken or proposes to take to remedy it.

(e)  The Republic will send to the Fiscal Agent as
soon as practicable after being so requested by the Fiscal
Agent a certificate of the Republic signed by a duly
authorized official of the Republic stating the aggregate
principal amount of the Securities held by or on behalf of
the Republic at the date of such certificate.

19.  <u>Forwarding of Notice; Inquiries</u>.  (a)  If the
Fiscal Agent shall receive any notice or demand addressed to
the Republic pursuant to the provisions of the Securities,
the Fiscal Agent shall promptly forward such notice or
demand to the Republic.

(b)  The Fiscal Agent shall respond promptly to
any inquiries received from any registered holder of
Securities regarding the matters covered by paragraphs (b),
(c) or (d) of Section 18 of this Agreement.

20.  <u>Listings</u>.  In the event that the terms of the
Securities of any Series provide for a listing on any stock
exchange, the Republic agrees to use all reasonable
endeavors to maintain the listing of the Securities on such

27

exchange. If, however, it is unable to do so, or having used
such endeavors, or if the maintenance of such listing is
agreed by the Fiscal Agent to be unduly onerous and the
Fiscal Agent is satisfied that the interests of registered
holders of the Securities would not thereby be materially
prejudiced, it will instead use all reasonable endeavors to
obtain and maintain a listing of the Securities on such
other stock exchange or exchanges as it may decide.

21. Notices.  (a)  Any communications from the
Republic to the Fiscal Agent with respect to this Agreement
shall be addressed to Bankers Trust Company, 4 Albany
Street, New York, New York 10006, Fax No.: 212-250-6961 or
212-250-6392, Tel. No.: 212-250-6571 and any communications
from the Fiscal Agent to the Republic with respect to this
Agreement shall be addressed to the Subsecretaría de
Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina
1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax
No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such
other address as shall be specified in writing by the Fiscal
Agent or by the Republic, as the case may be) and shall be
delivered in person or sent by first class prepaid post or
by facsimile transmission subject, in the case of facsimile
transmission, to confirmation by telephone to the foregoing
addresses.  Such notice shall take effect in the case of
delivery in person, at the time of delivery, in the case of
delivery by first class prepaid post seven (7) business days
after dispatch and in the case of delivery by facsimile
transmission, at the time of confirmation by telephone.

(b)  All notices to the registered holders of
Securities of a Series will be published in such
publications at such locations as any of the Securities of
such Series are listed for the period of time of such
listing and as otherwise provided pursuant to the terms of
the Securities of such Series.  If at any time publication
in any such publication is not practicable, notices will be
valid if published in an English language newspaper with
general circulation in the respective market regions as the
Republic with the approval of the Fiscal Agent, shall
determine.  [In addition, notices will be published in
Spanish in a newspaper of general circulation in Argentina,
as the Republic shall determine.]  Any such notice shall be
deemed to have been given on the date of such publication
or, if published more than once or on different dates, on
the first date on which publication is made.  Written notice
will also be given to the Depositary, if at the time of such
notice any of the Securities is represented by a Global
Security.

28

**27.** **Consent to Service; Jurisdiction.** The
Republic hereby appoints Banco de la Nación Argentina, at
its office located at 299 Park Avenue, New York, New York
10171, and, if such person is not maintained by the Republic
as its agent for such purpose, the Republic will appoint CT
Corporation System to act as its agent for such purpose) as
its authorized agent (the "Authorized Agent") upon whom
process may be served in any action arising out of or based
on the Securities or this Agreement by the holder of any
Security which may be instituted in any state or federal
court in The City of New York, and expressly accepts the
jurisdiction of any such court in respect of such action.
Such appointment shall be irrevocable until all amounts in
respect of the principal of and any interest due and to
become due on or in respect of all the Securities have been
provided to the Fiscal Agent pursuant to the terms hereof,
except that, if for any reason, such Authorized Agent ceases
to be able to act as Authorized Agent or to have an address
in the Borough of Manhattan, The City of New York, the
Republic will appoint another person in the Borough of
Manhattan, The City of New York, selected in its discretion,
as such Authorized Agent. Prior to the date of issuance of
any Securities hereunder, the Republic shall obtain the
consent of Banco de la Nación Argentina to its appointment
as such Authorized Agent, a copy of which acceptance it
shall provide to the Fiscal Agent. The Republic shall take
any and all action, including the filing of any and all
documents and instruments, that may be necessary to continue
such appointment or appointments in full force and effect as
aforesaid. Upon receipt of such service of process, the
Authorized Agent shall advise the Subministry of Finance
promptly by telecopier at 011-54-1-349-6080. Service of
process upon the Authorized Agent at the address indicated
above, as such address may be changed within the Borough of
Manhattan, The City of New York by notice given by the
Authorized Agent to each party hereto, shall be deemed, in
every respect, effective service of process upon the
Republic. The Republic hereby irrevocably and
unconditionally waives, to the fullest extent permitted by
law, any objection which it may now or hereafter have to the
laying of venue of any aforesaid action arising out of or in
connection with this Agreement brought in any such court has
been brought in an inconvenient forum. Neither such
appointment nor such acceptance of jurisdiction shall be
interpreted to include actions brought under the United
States federal securities laws. This appointment and
acceptance of jurisdiction is intended to be effective upon
execution of this agreement without any further act by the
Republic before any such court and introduction of a true
copy of this Agreement into evidence shall be conclusive and
final evidence of such waiver.

29

holder of any security in any competent court in the
Republic of Argentina.

The Republic hereby irrevocably waives and agrees
not to plead any immunity from the jurisdiction of any such
court to which it might otherwise be entitled in any action
arising out of or based on the Securities or this Agreement
by the holder of any Security.

23. Governing Law and Counterparts. This
Agreement shall be governed by, and interpreted in
accordance with, the laws of the State of New York. This
Agreement may be executed in any number of counterparts,
each of which shall be deemed an original, but all of which
together shall constitute one and the same instrument.

24. Headings. The headings for the sections of
this Agreement are for convenience only and are not part of
this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA


By:  /s/ Noemi LaGreca
     Name:  Noemi LaGreca
     Title: Financial
            Representative of
            Argentina in the
            United States

BANKERS TRUST COMPANY


By:  /s/ Wanda Camacho
     Name:  Wanda Camacho
     Title: Assistant
            Secretary

31

# EXHIBIT A

## FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend
relating to limitations on the transferability of such
global Security in such form as may be required by the U.S.
Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

## THE REPUBLIC OF ARGENTINA

### [Title of Series of Securities]

No. R-_____                                    [Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:              _____Yes  _____No

Authorized Denominations:

Form:                               ( ) Book-Entry
                                    ( ) Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:                ( ) The Interest Rate may not
                                        be changed prior to
                                        Maturity Date.

**The Interest Rate may be changed prior to Stated Maturity (see attached).**

**Optional Reset Dates (if applicable):**

**Interest Payment Dates:**

**Optional Extension of Maturity Date:** _____Yes _____No

    **Final Maturity:**

**Total Amount of OID:**

**Yield to Maturity:**

**Initial Accrual Period OID:**

**Optional Redemption:** _____Yes _____No

    **Optional Redemption Dates:**

    **If applicable as described above, the Redemption Price shall initially be ___% of the principal amount of this Security to be redeemed and shall decline at each anniversary of the Initial Redemption Date by ___% of the principal amount to be redeemed until the Redemption Price is 100% of such principal amount; provided, however, that if this Security is a Discount Note (as defined below), the Redemption Price shall be the Amortized Face Amount (as defined below) of this Note.**

**Optional Repayment:** _____Yes _____No

    **Optional Repayment Dates:**

    **Optional Repayment Prices:**

**Conversion into or Exchange for Other Securities**

    ( )  **This Security may not be converted into or exchanged for other securities.**

    ( )  **This Security may be converted into or**

2

[specify securities].

**Terms of Conversion
or Exchange
(if applicable):**

**Indexed Note:** _____ Yes (see attached) _____ No

**Exchange Rate Agent:**

**Other Terms:** _____ Yes _____ No

A-3

THE REPUBLIC OF ARGENTINA (herein called the "Republic"), for value received, hereby promises to pay to _____ or registered assigns, the principal sum of _____ U.S. Dollars (U.S.$_____) [other currency] on _____ [If the Security is to bear interest prior to maturity, insert--, and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [specify frequency] in arrears on [and _____] in each year, commencing _____ (each an "Interest Payment Date"), at the rate [of ___ % per annum] [to be determined in accordance with the provisions hereinafter set forth], until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person (the "registered Holder") in whose name this Security (or one or more predecessor Securities) is registered in the register of such Securities maintained pursuant to the Fiscal Agency Agreement at the close of business on the date (whether or not a business day) [, as the case may be] (each a "Regular Record Date") [,] [___ calendar days] next preceding such Interest Payment Date; provided, however, that the first payment of interest on any Security originally issued on a date between a Regular Record Date and an Interest Payment Date or on an Interest Payment Date will be made on the Interest Payment Date following the next succeeding Regular Record Date to the registered Holder on such next succeeding Regular Record Date. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Security (or one or more predecessor Securities) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Republic, notice whereof shall be given to registered Holders of Securities of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner [not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange.]

[Insert floating interest rate provisions, if applicable.]

[If the Security is not to bear interest prior to maturity, insert--(the "Stated Maturity"). The principal of

Case 1:07-cv-01489-TPG Document 142 Filed 08/13/2008 Page 5 of 21

this Security shall not bear interest except in the case of a default in payment of principal upon acceleration, upon redemption or at stated Maturity.]

Principal of (and premium, if any, on) [and interest payable at maturity or upon earlier redemption or repayment in respect of] this Security shall be payable in immediately available funds against surrender hereof at the corporate trust office of the Fiscal Agent hereinafter referred to and at the offices of such other Paying Agents as the Republic shall have appointed pursuant to the Fiscal Agency Agreement. Payments of principal of (and premium, if any[, on)) [and interest on] this Security shall be made in same-day funds in accordance with the foregoing and subject to applicable laws and regulations, by [(if the Republic so elects) transfer to an account denominated in U.S. dollars which is maintained by the payee with [any] [a] bank [located in _____]. If the Republic does not so elect, payments of principal (and premium, if any) shall be made against surrender of this Security [if applicable, insert--, and payments of interest shall be made,] by] forwarding by post or otherwise delivering a check [on or before the due date for such payment] to the registered address of the registered Holder of this Security. [If applicable, insert payment provisions for Securities denominated in a currency other than U.S. dollars]. This Security is a direct obligation of the Republic and does not have the benefit of any separate undertaking of other government entities (including Banco Central). The Republic covenants that until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid as provided herein or in the Fiscal Agency Agreement, it will at all times maintain offices or agencies in the Borough of Manhattan, The City of New York for the payment of the principal of (and premium, if any[, on)) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be valid or obligatory for any purpose.

A-5

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
[Title]

Attest:

_____
[Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY,
as Fiscal Agent

By_____
Authorized Signatory

A-6

This Security is one of a duly authorized issue of securities of the Republic (herein called the "Securities") issued and to be issued in one or more series in accordance with a Fiscal Agency Agreement, dated as of _____ (herein called the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (herein called the "Fiscal Agent"), which term includes any successor fiscal agent under the Fiscal Agency Agreement), copies of which Fiscal Agency Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, The City of New York.   This Security is one of the Securities of the Series designated on the face hereof[, limited in aggregate principal amount to U.S.$_____].   The Fiscal Agency Agreement may be amended from time to time in accordance with the terms thereof.

The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Republic.   Each Series will rank pari passu with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic.

The Securities of this Series are issuable only in fully registered form.   The Securities are issuable in [the] authorized denomination[s] of [currency/U.S.$_____ [and [any integral multiple thereof] [integral multiples of [currency/U.S.$_____ above that amount]].

Until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid, the Republic shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Securities may be surrendered for registration of transfer or exchange.   The Republic has initially appointed the corporate trust office of the Fiscal Agent as its agent in the Borough of Manhattan, The City of New York, for such purpose and has agreed to cause to be kept at such office a register in which subject to such reasonable regulations as it may prescribe, the Republic will provide for the registration of Securities and of transfers of Securities.   The Republic reserves the right to vary or terminate the appointment of the Fiscal Agent as security

A-7

other registrars or transfer agents or to approve any change
in the office through which any security registrar or any
transfer agent acts, provided that there will at all times
be a security registrar in the Borough of Manhattan, The
City of New York.

Subject to the provisions on the face hereof
concerning transfer restrictions, the transfer of a Security
is registrable on the aforementioned register upon surrender
of such Security at the corporate trust office of the Fiscal
Agent duly endorsed by, or accompanied by a written
instrument of transfer in form attached hereto duly executed
by, the registered Holder thereof or his attorney duly
authorized in writing. Upon such surrender of this Security
for registration of transfer, the Republic shall execute,
and the Fiscal Agent shall authenticate and deliver, in the
name of the designated transferee or transferees, one or
more new Securities, dated the date of authentication
thereof, of any authorized denominations and of a like
aggregate principal amount.

Subject to the provisions on the face hereof
concerning transfer restrictions, at the option of the
registered Holder upon request confirmed in writing,
Securities may be exchanged for Securities of any authorized
denominations and of a like aggregate principal amount, upon
surrender of the Securities to be exchanged at the corporate
trust office of the Fiscal Agent. Any registration of
transfer or exchange will be effected upon the Fiscal Agent
being satisfied with the documents of title and identity of
the person making the request and subject to such reasonable
regulations as the Republic may from time to time agree with
the Fiscal Agent. Whenever any Securities are so
surrendered for exchange, the Republic shall execute, and
the Fiscal Agent shall authenticate and deliver, the
Securities which the registered Holder making the exchange
is entitled to receive. The new Security issued upon such
exchange shall be so dated that neither gain nor loss of
interest shall result from such exchange. [If the Security
is a permanent global Security, insert--Notwithstanding the
foregoing, the exchange of this Security is subject to
certain limitations set forth in the Fiscal Agency Agreement
and on the face hereof.]

[In the event of a redemption of the Securities of
this series in part, the Republic shall not be required (i)
to register the transfer of or exchange any Security during
a period beginning at the opening of business 15 days
before, and continuing until, the date notice is given
identifying the Securities to be redeemed, or (ii) to

register the transfer of or exchange any Security, or
portion thereof, called for redemption.]

All Securities issued upon any registration of
transfer or exchange of Securities shall be the valid
obligation of the Republic evidencing the same indebtedness
and entitled to the same benefits this Security has at the
time of such registration of transfer or exchange.

No service charge shall be made for any
registration of transfer or exchange, but the Republic may
require payment of a sum sufficient to cover any tax or
other governmental charge payable in connection therewith,
other than an exchange in connection with a partial
redemption of a Security not involving any registration of a
transfer.

Prior to due presentment of this Security for
registration of transfer, the Republic, the Fiscal Agent and
any agent of the Republic or the Fiscal Agent may treat the
person in whose name this Security is registered as the
owner hereof for all purposes, whether or not this Security
is overdue, and neither the Republic nor the Fiscal Agent
nor any such agent shall be affected by notice to the
contrary.

In any case where the due date or the payment of
the principal of (and premium, if any[, on]) [or interest
on] any Security[, or the date fixed for redemption of any
Security,] shall be, at any place from which any check in
respect thereof is to be mailed or where such Security is to
be surrendered for payment [or, in the case of payments by
transfer, where such transfer is to be made], a day on which
banking institutions [If the Securities are denominated in
U.S. dollars, insert--in The City of New York] [If the
Securities are denominated in a currency other than U.S.
Dollars, insert--in [name of financial center of the country
in whose currency the securities are denominated] are
authorized or obligated by law to close [If the Securities
are denominated in a currency other than U.S. Dollars,
insert--or a day on which banking institutions in [name of
non-U.S. financial center] are not carrying out transactions
in [name of non-U.S. currency]], then such payment need not
be made on such date at such place but may be made on the
next succeeding day at such place which is not a day on
which banking institutions are authorized or obligated by
law to close, with the same force and effect as if made on
the date for such payment payable in respect of any such
delay.

its principal office in the Borough of Manhattan, The City
of New York, prior to each date on which a payment on or in
respect of the Securities of this series shall become due,
monies in such amounts which (together with any amounts then
held by the Fiscal Agent and available for the purpose) are
sufficient to make such payment. Any monies provided by the
Republic to the Fiscal Agent for the payment on or in
respect of the Securities of this series and remaining
unclaimed at the end of two years after such payment shall
have become due shall then be returned to the Republic, and
upon the return of such monies all liabilities of the Fiscal
Agent with respect thereto shall cease, without, however,
limiting in any way any obligation the Republic may have to
pay the principal of (or premium, if any[, on)] [or interest
on] this Security as the same shall become due.

So long as any Security remains outstanding, save
for the exceptions set forth in the Fiscal Agency Agreement,
the Republic will not create or permit to subsist, or permit
Banco Central to create or permit to subsist, any lien,
pledge, mortgage, security interest, deed of trust, charge
or other encumbrance or preferential arrangement which has
the practical effect of constituting a security interest
("Lien") upon the whole or any part of its assets or
revenues to secure any Public External Indebtedness (as
defined in the Fiscal Agency Agreement) of the Republic or
Banco Central unless, at the same time or prior thereto, the
Republic's obligations under the Securities either (i) are
secured equally and ratably therewith, or (ii) have the
benefit of such other security, guarantee, indemnity or
other arrangement as shall be approved by not less than 65
2/3% of the registered holders of Securities of any Series
then outstanding.

If an Event of Default (as defined in the Fiscal
Agency Agreement) occurs and is continuing then the holders
of not less than 25 percent in aggregate principal amount of
the Securities of this Series, by notice in writing to the
Republic at the specified office of the Fiscal Agent, shall
declare the principal amount of all the Securities of this
Series to be due and payable as set forth in the Fiscal
Agency Agreement.

All payments of principal, premium, if any, and
interest on this Security by the Republic will be made free
and clear of, and without withholding or deduction for or on
account of, any present or future taxes, duties, assessments
or governmental charges of whatever nature imposed, levied
collected, withheld or assessed by or within the Republic or
any authority therein or thereof having power to tax

A-10

Case 1:10-cv-01196 Document 5 Filed 08/30/2010 Page 11 of 21

(together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, (if applicable, insert--(1) on _____ in any year commencing with the year _____ and ending with the year ____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)) [at any time [on or after _____, 19__], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed): If redeemed [on or before _____, ____%, _____ of the years indicated,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and there after at a redemption price equal to ___% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

A-11

such securities of record at the close of business on such
Case 1:07-cv-04497-TPG Document 9 Filed 08/13/2008 Page 1 of 21
less than U.S.$_____ principal amount of Securities.]

(As and for a sinking fund for the retirement of
the Securities of this Series, the Republic will, until all
Securities of this Series are paid or payment thereof
provided for, deposit with the Fiscal Agent, prior to
_____ in each year, commencing in ____ and ending in ____,
an amount in cash sufficient to redeem on such _____
[not less than U.S.$_____ and not more than]
U.S.$_____ principal amount of Securities of this Series
at the redemption price specified above for redemption
through operation of the sinking fund. [The minimum amount
of any sinking fund payment as specified in this Paragraph
is herein referred to as a "mandatory sinking fund payment",
and any payment in excess of such minimum amount is herein
referred to as an "optional sinking fund payment".) The
cash amount of any [mandatory] sinking fund payment is
subject to reduction as provided below. Each sinking fund
payment shall be applied to the redemption of Securities in
this Series on such _____ as herein provided. [The
right to redeem Securities of this Series through optional
sinking fund payments shall not be cumulative and to the
extent not availed of on any sinking fund redemption date
will terminate.]]

[Notwithstanding the foregoing, the Republic may
not, prior to _____, redeem any Securities of this Series
as [and optional sinking fund payment] contemplated by the
preceding paragraph as a part of, or in anticipation of, any
refunding operation by the application, directly or
indirectly, of monies borrowed having an interest cost to
the Republic (calculated in accordance with general accepted
financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by
the Republic otherwise than through [mandatory] sinking fund
payments may be credited against subsequent [mandatory]
sinking fund payments otherwise required to be made [in the
inverse order in which they become due].]

[The Republic (i) may deliver outstanding
Securities of this Series (other than any previously called
for redemption) and (ii) may apply as a credit Securities of
this series which have been redeemed otherwise than through
the application of [mandatory] sinking fund payments, in
each case in satisfaction of all or any part of any
[mandatory] sinking fund payment and the amount of such
[mandatory] sinking fund payment shall be reduced
accordingly.]

A-12

[In the case of any partial redemption of
Securities of this Series pursuant to the sinking fund or at
the option of the Republic, the Securities to be redeemed
shall be selected by the Fiscal Agent not more than 60 days
prior to the redemption date from the outstanding Securities
not previously called for redemption, by such method as the
Fiscal Agent shall deem fair and appropriate and which may
provide for the selection for redemption of portions (equal
to U.S.$_____ or any integral multiple thereof) of the
principal amount of Securities of a denomination larger than
U.S.$_____.]

[This Security shall be redeemed, at the option of
the registered Holder thereof, upon the occurrence, on or
after _____, of a Redemption Event (as hereinafter
defined), at the redemption price equal to 100% of the
principal amount of this Security, together with interest
accrued thereon to the date of redemption; provided,
however, that the right of the registered Holder to present
this Security [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security (as
hereinafter provided),] for redemption shall, if the
Republic gives a Notice of Redemption Event (as hereinafter
defined), terminate upon expiration of the Option Period (as
hereinafter defined) relating to such Redemption Event.  In
the event of the occurrence of more than one Redemption
Event, each such Redemption Event shall be deemed to confer
upon the registered Holder of this Security a separate right
of redemption.]

[The Republic agrees that, if a Redemption Event
occurs, it will promptly give written notice thereof to the
Fiscal Agent (a "Notice of Redemption Event").  Promptly
after receiving such Notice of Redemption Event, the Fiscal
Agent shall give written notice to the registered Holder of
this Security (a "Notice of Right to Tender") stating that a
Redemption Event has occurred and including a form of notice
(a "Redemption Notice") pursuant to which the registered
Holder of this Security may elect to cause redemption.  The
Republic may, but shall not be obligated to, fix a record
date for the purpose of determining the registered Holders
of Securities of this series entitled to elect to cause
redemption of any such Holder elects to cause redemption of
this Security, deliver the Redemption Notice, together with
the certificate or certificates representing the Securities
to be redeemed [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security (as
hereinafter provided),] to the Fiscal Agent within a period
of 60 days (the "Option Period") of the date of the Notice

A-13

of Right to Tender, and (ii) the Republic shall select a
date for redemption (the "Redemption Date"), which shall be
within 60 days from the end of the Option Period, and, on
the Redemption Date, shall redeem the Securities tendered
for redemption within the Option Period.  At least 10 days
prior to the Redemption Date, the Republic shall [(i)]
deliver notice of the Redemption Date in the manner provided
for herein to each registered Holder who requested
redemption[, or (ii) publish notice of the Redemption Date
in the manner provided for herein, as the case may be].]

        [If the Security is a permanent global Security,
insert--It is understood that, notwithstanding the foregoing
provisions relating to redemption at the option of a
registered Holder and without otherwise limiting any right
of any other registered Holder to act by agent or proxy, the
Fiscal Agent may treat a person authorized, in a manner
satisfactory to the Fiscal Agent, by the U.S. Depositary to
take action in respect of a portion of this permanent global
Security as the registered Holder of such portion of such
Security and may make arrangements satisfactory to it, the
Republic and the U.S. Depositary in connection with this
partial redemption of this permanent global Security.]

        [Insert description of those events, if any, which
constitute Redemption Events.]

        [If notice of redemption has been given in the
manner set forth herein, the Securities so to be redeemed
shall become due and payable on the redemption date
specified in such notice and upon presentation and surrender
of the Securities [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security
satisfactory to the Fiscal Agent,] at the place or places
specified in such notice, the Securities shall be paid and
redeemed by the Republic at the places, in the manner and
currency and at the redemption price herein specified
together with accrued interest (unless the redemption date
is an Interest Payment Date) to the redemption date.  From
and after the redemption date, if monies for the redemption
of Securities called for redemption shall have been made
available at the corporate trust office of the Fiscal Agent
for redemption on the redemption date, the Securities called
for redemption shall cease to bear interest, and the only
right of the holder of such Securities shall be to receive
payment of the redemption price together with accrued
interest (unless the redemption date is an Interest Payment
Date) to the redemption date as aforesaid.  If monies for
the redemption of the Securities are not made available for
payment until after the redemption date, the Securities

                        A-14

[called for redemption until such monies have been so made available.]

[Any Security which is to be redeemed only in part shall be surrendered with, if the Republic or the Fiscal Agent so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Republic and the Fiscal Agent duly executed by, the holder thereof or such holder's attorney duly authorized in writing, and the Republic shall execute, and the Fiscal Agent shall authenticate and deliver to the registered Holder of such Security without service charge, a new Security or Securities of this Series, of any authorized denomination as required by such Holder, in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered.]

A meeting of registered holders of Securities of this Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given or taken by registered holders of Securities of this Series or to modify, amend or supplement the terms of the Securities of this Series or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of registered holders of Securities of this Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine. Notice of every meeting of registered holders of Securities of this Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of this Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding Securities of this Series (as defined in the Fiscal Agency Agreement) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of this Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

At any meeting of registered holders of Securities duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66-2/3% [or ___ %] in aggregate principal amount of the

A-15

66-2/3% [or ___ %] in aggregate principal amount of the Securities of this Series then Outstanding, the Republic [and the Fiscal Agent] may modify, amend or supplement the terms or provisions contained in the Securities of this Series, in any way, and the registered holders of Securities of this Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given, or taken by registered holders of Securities of this Series; provided, however, that no such action may, without the consent of the registered holder of each Security, (A) change the due date for the payment of the principal of or any installment of interest on any Security, (B) reduce the principal amount of any Security, the portion of such principal amount which is payable upon acceleration of the maturity of such Security or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Securities of this Series is payable, (D) reduce the proportion of the principal amount of Securities of this Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of this Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of this Series to (i) any modification of any provisions of the Fiscal agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of this Series and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Securities of this Series as soon as practicable.

All notices to the registered holders of Securities will be published in such publications at such locations as any of the Securities are listed for the period

A-16

of time or such listing and as a further condition to the terms of the Securities of this Series if at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

No reference herein to the Fiscal Agency Agreement and no provision of this Security or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic to pay the principal of (and premium, if any[, on]) [and interest on] this Security at the times, place and rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect of the Securities of this Series and interest payments thereon shall be prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

This Security shall be governed by and construed in accordance with the laws of the State of New York, except with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding"). The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

A-17

Case 1:07-cv-11497-TPG  Document 16-5  Filed 08/05/2008  Page 18 of 21
agreed that (i) service of all writs, process and summonses
in any Related Proceeding or any action or proceeding to
enforce or execute any Related Judgment brought against it
in the State of New York may be made upon Banco de la Nación
Argentina, presently located at 299 Park Avenue, New York,
New York 10171, and, if such person is not maintained by the
Republic as its agent for such purpose, the Republic will
appoint CT Corporation System to act as its agent for such
purpose.

To the extent that the Republic or any of its
revenues, assets or properties shall be entitled, in any
jurisdiction in which any Specified Court is located, in
which any Related Proceeding may at any time be brought
against it or any of its revenues, assets or properties, or
in any jurisdiction in which any Specified Court or Other
Court is located in which any suit, action or proceeding may
at any time be brought solely for the purpose of enforcing
or executing any Related Judgment, to any immunity from
suit, from the jurisdiction of any such court, from set-off,
from attachment prior to judgment, form attachment in aid of
execution of judgment, from execution of a judgment or from
any other legal or judicial process or remedy, and to the
extent that in any such jurisdiction there shall be
attributed such an immunity, the Republic has irrevocably
agreed not to claim and has irrevocably waived such immunity
to the fullest extent permitted by the laws of such
jurisdiction (and consents generally for the purposes of the
Foreign Sovereign Immunities Act to the giving of any relief
or the issue of any process in connection with any Related
Proceeding or Related Judgment), provided that such waiver
shall not be effective (i) with respect to the assets which
constitute freely available reserves pursuant to Article 6
of the Convertibility Law (the "Convertibility Law"), the
amount, composition and investment of which will be
reflected on the balance sheet and accounting statement of
Banco Central consistently prepared pursuant to Article 5 of
the Convertibility Law and (ii) with respect to property of
the public domain located in the territory of The Republic
of Argentina or property owned by the Republic and located
in its territory which is dedicated to the purpose of an
essential public service, and provided further that such
agreement and waiver, insofar as it relates to any
jurisdiction other than a jurisdiction in which a Specified
Court is located, is given solely for the purpose of
enabling the Fiscal Agent or a holder of Securities of this
Series to enforce or execute a Related Judgment.  The waiver
of immunities referred to herein constitutes only a limited
and specific waiver for the purpose of the Securities of
this Series and the Fiscal Agency Agreement and under no

A-18

circumstances shall it be interpreted as a guarantee unrelated to the Securities of this Series or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

A-19

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

_____
zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of

substitution in the premises.

Dated: _____     Signature: _____

> Notice: the signature to
> this assignment must
> correspond with the name
> as written upon the face
> of the written instrument
> in every particular,
> without alteration or
> enlargement or any change
> whatever.

A-20

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing *Amended Complaint* to be served on May

30, 2003 by hand delivery on:

> Jonathan I. Blackman, Esq.
> Cleary, Gottlieb, Steen & Hamilton
> One Liberty Plaza
> New York, NY 10006-1470

Attorneys for Defendant Republic of Argentina

Joel A. Chernov

JAC1615.WPD;

THE REPUBLIC OF ARGENTINA

U.S.$1,250,000,000

8 3/8% BONDS DUE DECEMBER 20, 2003

FISCAL AGENCY AGREEMENT

Dated December 10, 1993

## THE REPUBLIC OF ARGENTINA

FISCAL AGENCY AGREEMENT dated as of December 10, 1993, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1. <u>Underwriting Agreement</u>. The Republic has entered into an Underwriting Agreement dated December 9, 1993, with Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Salomon Brothers Inc and Banco Rio de la Plata S.A., as representatives of the several underwriters listed on Schedule II thereto, providing for the issue and sale by the Republic of U.S.$1,000,000,000 aggregate principal amount of 8 3/8% Bonds due December 20, 2003 (the "Bonds"). In addition, the Republic has agreed to issue and deliver U.S.$250,000,000 aggregate principal amount of Bonds to Banco Central de la Republica Argentina in exchange for certain other securities of the Republic.

2. <u>Appointment of Fiscal Agent; Paying Agents</u>. (a) The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, in the Borough of Manhattan, The City of New York, as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Bonds, upon the terms and conditions set forth herein. Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".

(b) The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the principal of and interest or Additional Amounts (as defined in the terms and conditions of the Bonds), if any, on the Bonds at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Bond is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York. The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent. If at any time Bonds are issued in definitive registered pursuant to Section 6 hereof, the Republic, with the acknowledgment of the Fiscal Agent, will appoint a paying agent and transfer agent in Luxembourg and a paying agent in Hong Kong for as long as

the Bonds are listed on the Luxembourg Stock Exchange and The Stock Exchange of Hong Kong Limited, respectively.  The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Bonds on terms approved by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.  <u>Authentication</u>.  The Fiscal Agent shall, upon delivery of the Bonds to it by the Republic, and a written order or orders to authenticate and deliver Bonds in a stated aggregate principal amount, (i) authenticate and register not more than said aggregate principal amount of Bonds and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Bonds and deliver them in accordance with the provisions of Sections 5, 6 and 8 of this Agreement.  The total amount of the Bonds to be issued and outstanding at any time shall not exceed the amount of U.S.$1,250,000,000 plus any additional bonds issued by the Republic pursuant to any supplement hereto in accordance with Section 15 of this Agreement.

4.  <u>Form</u>.  (a) The Bonds shall initially be issued in the form of one or more fully registered global certificates (such registered global certificates and any registered global certificates issued upon any transfer or exchange thereof or in replacement therefor are hereinafter referred to as the "Global Bonds") without coupons and registered in the name of The Depository Trust Company ("DTC") or its nominee (DTC, and any successor depository appointed by the Republic pursuant to Section 6(b) hereof, are hereinafter referred to as the "Depository").  So long as the Depository or its nominee is the registered holder of the Global Bonds it will be considered the sole owner and holder of the Bonds for all purposes hereunder and under the Global Bonds.  None of the Republic, the Fiscal Agent or any Paying Agent will have any responsibility or liability for any aspect of the records relating to or payments made by the Depository on account of beneficial interests in the Global Bonds.  Except as provided in Section 6 hereof, owners of beneficial interests in the Global Bonds will not be entitled to have Bonds registered in their names, will not receive or be entitled to receive Bonds in definitive registered form and will not be considered owners or holders thereof under this Agreement.  The Global Bonds will be substantially in the form attached hereto as Exhibit 1.

(b)  All Bonds (including the Global Bonds) shall be executed on behalf of the Republic by the signature,

2

manual or in facsimile, of a duly authorized person designated by the Republic.  In the event that any official of the Republic who shall have signed or whose facsimile signature shall appear upon any of the Bonds shall cease to hold such office before the Bonds so signed shall actually have been authenticated, registered or delivered, such Bonds nevertheless may be authenticated, issued and delivered with the same force and effect as though such person who signed such Bonds had not ceased to be such official of the Republic.

5.  <u>Registration, Transfers and Exchanges</u>.  (a) The Fiscal Agent, as agent of the Republic for such purpose, will at all times keep at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, a register or registers for the registration and registration of transfers and exchanges of Bonds, in which shall be entered the names and addresses of the registered holders of Bonds and the particulars of the Bonds held by such registered holders.  Subject to Section 6 hereof, upon surrender for registration of transfer of any Bond at said office, the Fiscal Agent shall authenticate, register and deliver in the name of the transferee or transferees a new Bond or Bonds for a like aggregate principal amount.  Subject to Section 6 hereof, upon surrender of any Bond at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Bond a new Bond or new Bonds of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Bonds.

(b)  All new Bonds authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Bonds of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)  All Bonds presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)  The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Bonds; <u>however</u>, the Republic may

3

require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Bonds, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)   The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Bond is registered as the owner of such Bond for the purpose of receiving payment of principal of and interest on such Bond, and all other purposes whatsoever, whether or not such Bond be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)   The Fiscal Agent shall not be required to register any transfer or exchange of Bonds during the period from the Regular Record Date (as defined in the Bonds) to the Interest Payment Date (as defined in the Bonds) and for the purposes of any interest payment made in accordance with Section 7(b) or (c) hereof, such payment shall be made to those persons in whose names the Bonds are registered on such Regular Record Date.

6.   Special Provisions Relating to Global Bonds.
(a)   Unless and until the Global Bonds are exchanged in whole for Bonds in definitive registered form, the Global Bonds may not be transferred except as a whole by the Depository to a nominee of the Depository or by a nominee thereof to the Depository or by the Depository or any such nominee to a successor Depository or a nominee of such successor Depository.

(b)   Except as provided in this subparagraph, Bonds will not be issued in definitive registered form.  If at any time the Depository notifies the Republic that it is unwilling or unable to continue as Depository for such Bonds, or if the Republic notifies the Depository that it will no longer continue as Depository for the Bonds, or if at any time the Depository ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depository, the Republic shall appoint a successor Depository with respect to such Bonds.  If a successor Depository for such Bonds is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depository notifies the Fiscal Agent or the Republic of the

4

acceleration of the indebtedness under the Bonds in accordance with the terms of the Bonds, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Bonds will authenticate and deliver, Bonds in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof, in an aggregate principal amount equal to the aggregate principal amount of the Global Bonds.

The Republic may at any time and in its sole discretion determine not to have any of the Bonds held in the form of Global Bonds.  In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Bonds will authenticate and deliver, Bonds in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof, in an aggregate principal amount equal to the aggregate principal amount of the Global Bonds.

Upon the exchange of the Global Bonds for Bonds in definitive registered form the Global Bonds shall be canceled by the Fiscal Agent.  Bonds in definitive registered form issued in exchange for the Global Bonds pursuant to this section shall be registered in such names as the Depository, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Fiscal Agent or the Republic.  The Fiscal Agent shall deliver such Bonds in definitive registered form to or as directed by the persons in whose names such definitive registered Bonds are so registered and will direct all payments to be made in respect of such Bonds in definitive registered form to the registered holders thereof on or after such exchange regardless of whether such exchange occurred after the record date for such payment.

All Bonds in definitive registered form, issued upon the exchange of the Global Bonds, shall be valid obligations of the Republic, evidencing the same debt, and entitled to the same benefits under this Agreement, as the Global Bonds surrendered upon such exchange.

7.  _Payment_.  (a)  The Republic will pay to the Fiscal Agent, in same-day funds, in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts, to an account to be specified by the Fiscal Agent, on the day on which the same shall become due, all amounts to be paid on the Bonds for principal and interest on that date as required by the terms of the Bonds, and the Republic hereby authorizes and directs the Fiscal Agent, from the funds so paid to it, to make payment of the principal and interest in respect of the

Bonds in accordance with their terms and the provisions set forth below. If any date for payment in respect of a Bond is not a Business Day, such payment shall be made on the next following Business Day. "Business Day" means a day on which banking institutions in The City of New York and at the applicable place of payment are not authorized or obligated by law or executive order to be closed.

(b)    Payment of principal and interest on the Global Bonds shall be made by the Fiscal Agent to the Depository in accordance with the regular procedures established from time to time by the Depository for use of its Same-Day Funds Settlement System.

(c)    Payment of principal in respect of Bonds in definitive registered form issued pursuant to Section 6(b) hereof shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement. Payment of interest due prior to or on maturity will be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Bonds, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Bonds. Such check shall be made payable to the order of the registered owner or, in the case of joint registered owners, to the order of all such joint owners (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint owners whose name stands first in the register as one of such joint owners. The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Bonds sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d)    All money paid to the Fiscal Agent under Section 7(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Bonds to be applied by the Fiscal Agent to payments due on the Bonds at the time and in the manner provided for in this Agreement and the Bonds. Any money deposited with the Fiscal Agent for the payment of the principal or interest in respect of any Bond remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic without interest, and the registered holder of Bond may thereafter look only to the Republic for any payment to which such holder may be entitled.

6

8.  **Mutilated, Destroyed, Stolen or Lost Certificates.**  (a) In case any Bond certificate is mutilated, defaced, destroyed, stolen or lost, application for replacement shall be made to the Fiscal Agent who shall promptly transmit such application to the Republic.  Such application shall be accompanied by the mutilated or defaced certificate or receipt of proof, satisfactory to the Republic in its discretion, of the destruction, theft or loss of the certificate, and upon receipt by it of an indemnity satisfactory to it, the Republic shall execute a new certificate of like tenor, and upon written instructions from the Republic the Fiscal Agent shall thereupon cancel the mutilated or defaced certificate if applicable and authenticate, register and deliver such new certificate in exchange for the mutilated or defaced certificate or in substitution for the destroyed, stolen or lost certificate. Such new certificate will be so dated that neither gain nor loss in interest will result from such exchange or substitution.  All expenses associated with procuring such indemnity and with the preparation, authentication and delivery of a new certificate will be borne by the registered holder of the mutilated, defaced, destroyed, stolen or lost certificate.

(b)  Whenever any Bond, alleged to have been lost, stolen or destroyed in replacement for which a new Bond has been issued, is presented to the Fiscal Agent or any Paying Agent for payment at maturity or for registration of transfer or exchange, the Fiscal Agent or the Paying Agent, as the case may be, shall immediately notify the Republic in respect thereof and shall deal with such Bond in accordance with the Republic's instructions.

9.  **Maturity, Redemption and Purchases.**  (a) Unless previously repurchased by the Republic, as provided below, the principal amount of the Bonds is due and payable on December 20, 2003.

(b)  The Republic may at any time purchase Bonds at any price in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives.  The Bonds so purchased, while held by or on behalf or for the benefit of the Republic shall not entitle the registered holder thereof to vote at any meetings of registered holders of Bonds and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the registered holders of the Bonds. Notwithstanding the foregoing, the Republic will not acquire any beneficial interest in any Bonds unless it gives prior written notice of each acquisition to the Fiscal Agent.  The

7

Fiscal Agent will be entitled to rely without further investigation on any such notification (or lack thereof).

(c)  If the Republic elects to cancel any Bonds when Bonds have been issued in the form of a Global Bond, it may request the Fiscal Agent to instruct the Depository to reduce the outstanding aggregate principal amount of the Global Bonds in accordance with the regular procedures of the Depository in effect at such time.

10.  <u>Cancellation and Destruction</u>.  All Bonds which are paid at maturity or upon earlier repurchase, or are mutilated, defaced or surrendered in exchange for other certificates, shall be cancelled by the Fiscal Agent who shall register such cancellation.  The Fiscal Agent shall, as soon as practicable after the date of any such cancellation, furnish the Republic with a certificate or certificates stating the serial numbers and total number of Bonds that have been cancelled.  The Fiscal Agent shall destroy all cancelled Bonds in accordance with the instructions of the Republic and shall furnish to the Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Bonds destroyed hereunder.

11.  (a)  <u>Limit on Liability</u>.  In acting under this Agreement the Fiscal Agent and any Paying Agent are acting solely as agents of the Republic and do not assume any obligation or relationship of agency or trust for or with any of the holders of the Bonds, except that all funds held by the Fiscal Agent for payment of principal or interest shall be held in trust, subject to the provisions of Sections 5 and 7(d).

(b)  <u>Acceptance of Appointment</u>.  The Fiscal Agent and each Paying Agent accepts its obligations set forth in or arising under this Agreement, the Paying Agency Agreements and the Bonds upon the terms and conditions hereof and thereof, including the following, to all of which the Republic agrees and to all of which the holders of the Bonds shall be subject:

(i)  the Fiscal Agent may consult as to legal matters with lawyers selected by it, who may be employees of or regular independent counsel to the Republic, and the Fiscal Agent shall be protected and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion of such lawyers; and

8

(ii)   the Fiscal Agent and each Paying Agent, and their officers, directors and employees, may become the holder of, or acquire any interest in, any Bonds, with the same rights that it or they would have if it were not the Fiscal Agent or a Paying Agent hereunder, or they were not such officers, directors, or employers, and may engage or be interested in any financial or other transaction with the Republic and may act on, or as depository, trustee or agent for, any committee or body of holders of Bonds or other obligations of the Republic as freely as if it were not the Fiscal Agent or a Paying Agent hereunder or they were not such officers, directors, or employees.

12.   <u>Expenses and Indemnity</u>.   (a)   In connection with the Fiscal Agent's appointment and duties as Fiscal Agent, the Republic will pay the Fiscal Agent compensation agreed upon by them.   The Republic will indemnify the Fiscal Agent and each Paying Agent against any loss or liability and agrees to pay or reimburse the Fiscal Agent and each Paying Agent for any reasonable expense, which loss, liability or reasonable expense may be incurred by the Fiscal Agent or any Paying Agent by reason of, or in connection with, the Fiscal Agent's or any Paying Agent's appointment and duties as such, except as such result from the negligence, bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.   In addition, the Republic shall pursuant to arrangements separately agreed upon by the Republic and the Fiscal Agent, transfer to the Fiscal Agent, upon presentation of substantiating documentation satisfactory to the Republic, amounts sufficient to reimburse the Fiscal Agent for certain out-of-pocket expenses reasonably incurred by it and by any Paying Agent in connection with their services.   The obligation of the Republic under this paragraph shall survive payment of the Bonds and resignation or removal of the Fiscal Agent.

(b)   The Fiscal Agent and each Paying Agent agrees to indemnify and hold harmless the Republic against all direct claims, actions, demands, damages, costs, losses and liabilities (excluding consequential and punitive damages) arising out of or relating to the bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.

13.   <u>Successor Fiscal Agent</u>.   (a) The Republic agrees that there shall at all times be a Fiscal Agent hereunder, and that the Fiscal Agent shall be a bank or trust company organized and doing business under the laws of the United States of America or of the State of New York, in good standing and having a place of business in the Borough

of Manhattan, The City of New York, and authorized under such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal Agent hereunder may be merged or converted, or any corporation with which the Fiscal Agent may be consolidated, or any corporation or bank resulting from any merger, conversion or consolidation to which the Fiscal Agent shall sell or otherwise transfer all or substantially all of the corporate trust business of the Fiscal Agent, provided that it shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, but subject to prior notice to and the prior approval of the Republic.

(b)  The Fiscal Agent may at any time resign by giving written notice to the Republic of its resignation, specifying the date on which its resignation shall become effective (which shall not be less than 120 days after the date on which such notice is given unless the Republic shall agree to a shorter period);  provided that no such notice shall expire less than 30 days before or 30 days after the due date for any payment of principal or interest in respect of the Bonds.  The Republic may remove the Fiscal Agent at any time by giving written notice to the Fiscal Agent specifying the date on which such removal shall become effective.  Such resignation or removal shall only take effect upon the appointment by the Republic of a successor Fiscal Agent and upon the acceptance of such appointment by such successor Fiscal Agent.  Any Paying Agent may resign or may be removed at any time upon like notice, and the Republic in any such case may appoint in substitution therefor a new Paying Agent or Paying Agents.

(c)  The appointment of the Fiscal Agent hereunder shall forthwith terminate, whether or not notice of such termination shall have been given, if at any time the Fiscal Agent becomes incapable of performing its duties hereunder, or is adjudged bankrupt or insolvent, or files a voluntary petition on bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a liquidator or receiver of all or any substantial part of its property or admits in writing its inability to pay or meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for the winding up or dissolution of the Fiscal Agent, or if a liquidator or receiver of the Fiscal Agent of all or any substantial part of its property is appointed, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or

10

insolvency law or if any public officer takes charge or control of the Fiscal Agent or its property or affairs for the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such resignation or removal of the Fiscal Agent, or if the Fiscal Agent shall become unable to act as such or shall cease to be qualified as aforesaid, the Republic shall appoint a successor Fiscal Agent, qualified as aforesaid.  Upon the appointment of a successor Fiscal Agent and its acceptance of such appointment, the retiring Fiscal Agent shall, at the direction of the Republic and upon payment of its compensation and expenses then unpaid, deliver and pay over to its successor any and all securities, money and any other properties then in its possession as Fiscal Agent and shall thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Republic an instrument accepting such appointment hereunder, and thereupon such successor without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor, with like effect as if originally named Fiscal Agent hereunder.

(e)  If the Fiscal Agent resigns or ceases to act as the Republic's fiscal agent in respect of the Bonds pursuant to Section 13(c) of this Agreement, the Fiscal Agent shall only be entitled to annual fees otherwise payable to it under this Agreement on a pro rata basis for that period since the most recent anniversary of this Agreement during which the Fiscal Agent has acted as fiscal agent hereunder.  In the event that the Fiscal Agent ceases to act as the Republic's fiscal agent in respect of the Bonds for any other reason, the Fiscal Agent shall be entitled to receive the full amount of the annual fees payable to it in respect of the Bonds pursuant to Section 12 of this Agreement.

14.  <u>Meetings of Holders of Bonds; Modifications</u>.
(a)  A meeting of registered holders of Bonds may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Bonds to be made, given or taken by registered holders of Bonds or to modify, amend or supplement the terms of the Bonds or this Agreement as hereinafter provided.  The Fiscal Agent may at any time call a meeting of holders of Bonds for any such purpose to be held at such time and at such place in the Borough of Manhattan, The City of New York as the

11

Fiscal Agent shall determine. Notice of every meeting of registered holders of Bonds, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Bonds, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding Bonds (as defined in subsection (d) of this Section) shall have requested the Fiscal Agent to call a meeting of the registered holders of Bonds for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

To be entitled to vote at any meeting of registered holders of Bonds, a person shall be a registered holder of Outstanding Bonds or a person duly appointed by an instrument in writing as proxy for such a holder. The persons entitled to vote a majority in principal amount of the Outstanding Bonds shall constitute a quorum. At the reconvening of any meeting adjourned for a lack of a quorum, the persons entitled to vote 25% in principal amount of the Outstanding Bonds shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. The Fiscal Agent may make such reasonable and customary regulations as it shall deem advisable for any meeting of registered holders of Bonds with respect to the appointment of proxies in respect of registered holders of Bonds, the record date for determining the registered holders of Bonds who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 30 nor more than 90 days prior to such meeting, the adjournment and chairmanship of such meeting) the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(b)   (i) At any meeting of registered holders of Bonds duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66 2/3% in aggregate principal amount of the Bonds then Outstanding (or of such other percentage as may be set forth in the Bonds with respect to the action being taken), or (ii) with the written consent of the owners of not less than 66 2/3% in aggregate principal amount of the Bonds then Outstanding (or of such other percentage as may be set forth

in the text of the Bonds with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Bonds or this Agreement, in any way, and the registered holders of Bonds may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Bonds to be made, given, or taken by registered holders of Bonds; provided, however, that no such action may, without the consent of the registered holder of each Bond, (A) change the due date for the payment of the principal of or any installment of interest on any Bond, (B) reduce the principal amount of any Bond, the portion of such principal amount which is payable upon acceleration of the maturity of such Bond or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Bonds is payable, (D) reduce the proportion of the principal amount of Bonds the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Bonds or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Bonds, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Bonds.  Any such modification, authorization or waiver shall be binding on the registered holders of Bonds and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Bonds as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Bonds to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

13

(c)   Any instrument given by or on behalf of any registered holder of a Bond in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Bond or any Bond issued directly or indirectly in exchange or substitution therefor or in lieu thereof.  Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be conclusive and binding on all registered holders of Bonds, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Bonds.  Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Bonds or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Bonds, in all cases as provided in the Bonds.

Bonds authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action.  New Bonds modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may be prepared by the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Bonds.

(d)   For purposes of the provisions of this Agreement and the Bonds, any Bond authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)   Bonds theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

14

(ii)   Bonds which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Bonds are present at a meeting of registered holders of Bonds for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Bonds owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

15.   Further Issues.   The Republic may from time to time, without notice to or the consent of the registered holders of the Bonds, create and issue further bonds ranking pari passu with the Bonds in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further bonds or except for the first payment of interest following the issue date of such further bonds) and so that such further bonds shall be consolidated and form a single series with the Bonds and shall have the same terms as to status, redemption or otherwise as the Bonds.   Any further bonds shall be issued with the benefit of an agreement supplemental to this Agreement.

16.   Reports.   (a)   The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under this Agreement.   The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b)   The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default (as defined in the Bonds) or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(c)   The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the effect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of

15

Default or Potential Event of Default has occurred and is continuing on the date of such certificate or, if an Event of Default or a Potential Event of Default has occurred, the circumstances surrounding it and the steps that the Republic has taken or proposes to take to remedy it.

(d)   The Republic will send to the Fiscal Agent as soon as practicable after being so requested by the Fiscal Agent a certificate of the Republic, signed by a duly authorized official of the Republic stating the aggregate principal amount of the Bonds held by or on behalf of the Republic at the date of such certificate.

17.   Forwarding of Notice; Inquiries.   (a)   If the Fiscal Agent shall receive any notice or demand addressed to the Republic pursuant to the provisions of the Bonds, the Fiscal Agent shall promptly forward such notice or demand to the Republic.

(b)   The Fiscal Agent shall respond promptly to any inquiries received from any registered holder of Bonds regarding the matters covered by paragraphs (b), (c) or (d) of Section 16 of this Agreement.

18.   Listings.   The Republic agrees to use all reasonable endeavors to maintain the listing of the Bonds on the Luxembourg Stock Exchange, The Stock Exchange of Hong Kong Limited and the Buenos Aires Stock Exchange.  If, however, it is unable to do so, having used such endeavors, or if the maintenance of such listing is agreed by the Fiscal Agent to be unduly onerous and the Fiscal Agent is satisfied that the interests of registered holders of the Bonds would not thereby be materially prejudiced, it will instead use all reasonable endeavors to obtain and maintain a listing of the Bonds on such other stock exchange or exchanges as it may decide.

19.   Notices.   (a) Any communications from the Republic to the Fiscal Agent with respect to this Agreement shall be addressed to Bankers Trust Company, 4 Albany Street, New York, New York 10006,  Fax No.: 212-250-6961 or 212-250-6392, Tel. No.: 212-250-6571 and any communications from the Fiscal Agent to the Republic with respect to this Agreement shall be addressed to the Subsecretaría de Financiamiento, Hipolito Yrigoyen 250, Piso 6 - Oficina 627, 1310 - Buenos Aires, Attention: Deuda Externa, Fax No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such other address as shall be specified in writing by the Fiscal Agent or by the Republic, as the case may be) and shall be delivered in person or sent by first class prepaid post or by facsimile transmission subject, in the case of facsimile

transmission, to confirmation by telephone to the foregoing addresses. Such notice shall take effect in the case of delivery in person, at the time of delivery, in the case of delivery by first class prepaid post seven (7) business days after dispatch and in the case of delivery by facsimile transmission, at the time of confirmation by telephone.

(b)  All notices to the registered holders of Bonds will be published in English in London, England in the Financial Times, in New York, New York in The Wall Street Journal, and so long as the Bonds are listed on the Luxembourg Stock Exchange and The Stock Exchange of Hong Kong Limited, in Luxembourg in the Luxemburger Wort and in Hong Kong in the South China Morning Post, respectively.  If at any time publication in any such newspaper is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine.  In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.  Written notice will also be given to DTC, provided at the time of such notice the Bonds are represented by a DTC Global Bond.

20.   Consent to Service; Jurisdiction.  The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose] as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Bonds or this Agreement by the holder of any Bond which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action.  Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Bonds have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Bonds hereunder, the Republic shall obtain the consent of Banco de la Nación

17

Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

Notwithstanding the foregoing, any action arising out of or based on the Bonds may be instituted by the holder of any Bond in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Bonds or this Agreement by the holder of any Bond.

21. <u>Governing Law and Counterparts</u>. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

22.  **Headings**.  The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By _____
Name:
Title:

BANKERS TRUST COMPANY

By _____
Name:
Title:

19

22.  <u>Headings</u>.  The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By _____
      Name:
      Title:

BANKERS TRUST COMPANY

By *Wanda Camacho*
    Name: Wanda Camacho
    Title: Assistant Secretary

19